IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GORDON ROY PARKER, | : | |
| Plaintiff, | : | CASE NO.: 02-cv-567 |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA, a | : | |
| Pennsylvania nonprofit corporation, | : | |
| | : | |
| Defendant. | : | |

## O R D E R

**AND NOW**, this _____ day of _____, 2003, upon consideration of the Motion of the University of Pennsylvania for Summary Judgment and plaintiff's response thereto, it is hereby

ORDERED that the Motion is GRANTED, judgment is entered in favor of Defendant and against the Plaintiff, and all remaining counts in the Amended Complaint are dismissed with prejudice.

**BY THE COURT:**

_____
Honorable Anita B. Brody, J.

924180v3

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                          :
                                            :
                    Plaintiff,              :          CASE NO.: 02-cv-567
                                            :
        v.                                  :
                                            :
UNIVERSITY OF PENNSYLVANIA, a               :
Pennsylvania nonprofit corporation,         :
                                            :
                    Defendant.              :
                                            :

## THE UNIVERSITY OF PENNSYLVANIA'S
## MOTION FOR SUMMARY JUDGMENT

Defendant the University of Pennsylvania ("Penn") moves for summary judgment under

F.R.C.P. 56 on the basis set forth in the accompanying memorandum.


Respectfully submitted,


Date:   June 5, 2003                     *Crystal D. Deazle*
                                         John M. Myers (Pa. Id. No. 6642)
                                         Crystal D. Deazle (Pa. Id. No. 87901)

                                         MONTGOMERY, McCRACKEN,
                                            WALKER & RHOADS, LLP
                                         123 South Broad Street
                                         Philadelphia, PA  19109
                                         Telephone No.:      (215) 772-1500
                                         Facsimile No.:      (215) 772-7620

                                         Attorneys for Defendant
                                         UNIVERSITY OF PENNSYLVANIA


924180v3

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GORDON ROY PARKER, | : | |
| Plaintiff, | : | CASE NO.: 02-cv-567 |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA, a Pennsylvania nonprofit corporation, | : | |
| Defendant. | : | |

## THE UNIVERSITY OF PENNSYLVANIA'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The University of Pennsylvania ("Penn") submits this memorandum in support of its

Rule 56(c) motion for summary judgment. There is no genuine issue as to any material fact and

Penn is entitled to judgment as a matter of law.


## I.   INTRODUCTION

Mr. Parker has summarily described the basis of his lawsuit far better than can be

paraphrased:

> The issue of damages in this lawsuit is not about his inability to get
> any job, but instead to tap into the far superior compensation and
> benefits structure offered by the University of Pennsylvania."
> (Exhibit 6, ¶ 10).

In short, Parker asks this Court to short circuit a wholly legitimate hiring process and install him

in some job — any job — by judicial fiat.

Parker alleges that Penn discriminated against him based on his race (Count I) and gender

(Count II) when it failed to hire him in July 2001, after he had electronically submitted his

924180v3

resume to Penn's human resources database at URL www.hr.upenn.edu/jobs.  Parker further

alleges that Penn's Affirmative Action policy, as implemented in the hiring process, constitutes

an employment practice that has a disparate impact on Caucasian men and therefore violates the

law.  Additionally, Parker asserts a continuing violation theory of retaliation (Count III) based on

his 1992-1993 Penn employment. The Court has previously dismissed Parker's disability

discrimination claim (Count IV), therefore, that claim is not at issue in the instant motion for

summary judgment.


## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The facts are relatively simple and undisputed.  Parker never applied for a position at

Penn, and Penn neither interviewed him nor rejected him before he filed his EEOC charge.

Moreover, Parker's resume did not self-identify him a Caucasian male.  Since Parker was never

considered, there could not have been retaliation.

The essential, undisputed, facts are:

1.       On July 16, 2001, Parker electronically submitted his resume to Penn's human

resources database via the Internet.  (Amend. Compl. ¶ 7; Exhibit 1, Parker's Resume posted to

the website).

2.       He did not apply for any open or available position for which he was qualified.

(Exhibit 2,[1] Affidavit of Donna Showell-Brown ¶ 6).  Parker has admitted this.  (Exhibit 5, ¶¶ 28,

30).[2]

---

[1] This Affidavit was previously attached as Exhibit C to Penn's Motion for Sanctions For Plaintiff's Refusal to Obey the April 1, 2003 Order.

[2] This fact is no longer disputed.  See Plaintiff's Motion for Partial Sumamry Judgment, filed concurrently with Penn's motion, at p.2.

- 2 -

3.    Parker received an electronic e-mail confirmation after he submitted his resume, that in pertinent part stated:

> Thank you for submitting your resume to the University of Pennsylvania.
>
> If it is felt that a personal meeting would be appropriate, you will be contacted within the next thirty (30) days.
>
> Otherwise, this will be your only communication from us.
>
> Again, thank you for your interest in the University of Pennsylvania....

(Exhibit 3,[3] Electronic E-Mail Confirmation).

4.    Penn's human resources homepage states that "recruiters search the resume database and forward your resumes to the Hiring Officers for <u>positions you have expressed interest in</u> if you meet the minimum qualifications. (Exhibit 4,[4] Penn's Human Resources homepage (emphasis added)).

5.    Penn's hiring system allows for the possible consideration of an applicant in two different ways: first, one may apply for a specific job, identified on the website; second, if no specific application is made, then the resume simply resides in Penn's database along with thousands of other resumes. (Exhibit 2, ¶ 7).

6.    The database of resumes in which Parker's resume is found is searchable by Penn recruiters, using a "key word" type search, should the need arise. (<u>Id.</u> ¶ 10).

---

[3] This Electronic E-Mail Confirmation was previously attached as Exhibit C to Penn's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

[4] http://www.hr.upenn.edu/jobs/howtoapply.asp.

924180v3

7.      Given the large volume of qualified applicants applying for specific jobs, recruiters can, but rarely do, consider applicants who do not apply for a specific job posting.  (Id. ¶ 8).

8.      During the several months after Parker posted his resume, no position for which he self-identifies as being qualified was filled from applicants found using the database search capability.  (Id. ¶ 11).

9.      This is because qualified applicants were found among those individuals who actually applied for the specific jobs for which there were vacancies.  (Id. ¶ 11).

10.      There are so many resumes in Penn's database that the "key word" search method, for positions not requiring particularly unique skills or prerequisites, results in so many "matches" that this kind of search is not useful.  (Id. ¶ 12).

11.      To illustrate the point, Donna Showell-Brown, Manager of Recruitment and Staffing, ran several searches using various key words taken from Parker's resume.  The chart below shows the results of her search:

| KEYWORD | NUMBER OF RESUMES |
| --- | --- |
| Secretary administrative internet web development design | 1 [Mr. Parker's] |
| Secretary | 10,375 |
| Administrative | 49,144 |
| Internet | 27,607 |
| Web development | 2,101 |
| Web design | 2,578 |

(Id. ¶ 12).

12.      It is not practical or necessary, nor is it the practice, for Penn recruiters to use the database for filling vacancies in this way.  (Id. ¶ 13).

- 4 -

13.     Each vacancy filled around the time of Parker's posting to Penn's website was filled from the pool of people who actually applied for a specific job.  (Id. ¶ 14).

14.     None of the vacancies around the time of Parker's posting to Penn's website was filled by an applicant who had not applied for the specific job.  (Id. ¶ 11).

15.     Parker was not interviewed for any Penn job prior to his filing of his EEOC complaint.  (Id. ¶ 7; Amend. Compl. ¶ 7).

16.     Parker did not self-identify, in his resume or in any other way, that he is a Caucasian man.  (Id. ¶ 16).

17.     Parker's resume posting would have been treated no differently had he self-identified as a non-Caucasian or a female.  (Id. ¶¶ 18, 19).

18.     Penn's hiring policy is to insure that, in each case, it hires the best candidate for the position, regardless of race, gender or actual or perceived disability.  (Id. ¶ 20).  No hiring preference is given to women or minority candidates.

19.     Penn is an Equal Opportunity Employer.  As set forth on its Human Resources website:

> **An Equal Opportunity Employer**
> The University of Pennsylvania is an equal opportunity
> employer and does not discriminate on the basis of race,
> color, sex, sexual preference, age religion national or ethnic
> origin, disability or veteran status.

(Exhibit 4).

20.     Since Parker was not considered for any open position — because of his failure to apply — no consideration was or could have been given to his prior employment relation with Penn, which was in 1992-1993.

- 5 -

## III.   ARGUMENT

### A.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interroga-

tories and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Federal Rule of Civil Procedure 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

Solomen v. Redwood Advisory Co., 183 F. Supp.2d 748, 751 (E.D. Pa. 2002) (Brody, J.).  A

court must determine "whether the evidence presents a sufficient [factual] disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Summary judgment is appropriate against a party who fails to make a showing sufficient

to establish the existence of every element essential to that party's case and for which the party

will bear the burden of proof at trial.  Celotex v. Catrett, 477 U.S. at 322.  Plaintiff's burden to

establish every essential element of his claim is not met by speculation or conclusory allegations.

Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).  There is no issue

for trial unless there is "sufficient evidence favoring the non-moving party" such that a reason-

able jury could return a verdict in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S.

at 248-49.  "A factual dispute is 'material' only if it might affect the outcome of the suit under

governing law."  Wilson v. Pennsylvania State Police Deportment, 964 F. Supp. 898, 901 (E.D.

Pa. 1997) (Citing Anderson, 477 U.S. at 248).

When considering a motion for summary judgment "all of the facts must be viewed in a

light most favorable to the non-moving party."  Christy v. Pennsylvania Turnpike Commission,

904 F. Supp. 427, 429 (E.D. Pa. 1995) (Citing Anderson, 477 U.S. at 256).  Additionally, at the

summary judgment stage, the court must view the evidence, and draw all reasonable inferences

- 6 -

924180v3

in the light most favorable to the non-moving party.  <u>Ideal Dairy Farms, Inc. v. John LaBatt, Ltd.</u>, 90 F.3d 737, 744 (3rd Circuit, 1996); <u>Solomen v. Redwood Advisory Co.</u>, 183 F. Supp.2d at 751 (citing <u>Dici v. Com. of Pa.</u>, 91 F.3d 542, 547 (3d Cir. 1996).  The party opposing summary judgment, however, "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials or... vague statements." <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 500 (3rd Circuit, 1991).

Penn is entitled to summary judgment in this case because (1) Parker did not apply for any position for which he was qualified; (2) Penn never rejected him for a position prior to his filing an EEOC complaint; (3) there is no causal connection between any protected activity and Penn's failure to hire.

> **B.**    **Parker's Claims Of Race And Gender Discrimination Fail Because:  (1) He Did Not Apply For Any Position At Penn; and (2) Penn Never Rejected Him From Any Position Prior To His Filing The EEOC Charge That Led To This Lawsuit**

In order for Parker to survive this motion for summary judgment, he must show that he can satisfy all of the elements of a *prima facie* case of discrimination.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

> **1.**    **Parker did not apply for a position when he electronically posted his resume to Penn's Human Resources database**

Under <u>McDonnell Douglas</u>, Parker has the initial burden of establishing a *prima facie* case of discrimination. <u>Id.</u>  In order to establish his *prima facie* case of race and gender discrimination in this failure-to-hire context, Parker must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after the plaintiff was rejected, the position remained open and the employer continued to seek applicants with plaintiff's qualifications. <u>Id.</u>; <u>Texas Dep't Comm. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981);

- 7 -

924180v3

Hoechstetter v. City of Pittsburgh, 248 F. Supp.2d 407, 409-10 (W.D. Pa. 2003). The standard for establishing a *prima facie* case of reverse discrimination in a failure-hire context is the same as the standard in any other case where an individual alleges discrimination. Iadimarco v. Runyon, 190 F.3d 151, 160-161 (3d Cir. 1999).

The central issues here turn on the second and third elements. The question is whether Parker applied, and was rejected, for a job by posting his resume to the human resources website on July 16, 2001. Parker has admitted that he only "generally submitted" his resume to the database. (Exhibit 5,[5] ¶¶ 28, 30; Exhibit 2, ¶ 6). This admission, his resume, and the Showell-Brown Affidavit demonstrate that he did not apply for a job. Thus, his *prima facie* case fails, and Penn is entitled to summary judgment as a matter of law.

A Court may excuse a plaintiff's failure to formally apply for a job only where "that plaintiff made every reasonable attempt to convey his interest in the job to the employer." EEOC v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990) (emphasis added). Here, Parker made no such reasonable attempt or effort to apply for any actual open position. Instead, he submitted a stealth resume, which he now wants to turn into an application. Rather, Parker's idea is more simple (perhaps, radical). He admits this "is not about his inability to get any job, but instead to tap into the far superior compensation and benefits structure offered by the University of Pennsylvania." (Exhibit 6,[6] ¶ 10).[7] These facts are unlike those where courts excuse a plaintiff's failure to apply. Penn has no burdensome application procedure that works

---

[5] Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss.

[6] Plaintiff's Opposition to Defendant's Motion to Compel Plaintiff to Submit to an Independent Medical Examination.

[7] In his recently filed Motion for Partial Summary Judgment, Parker argues consistently that "Penn does not wish to employ Plaintiff, has not attempted to employ Plaintiff ..." (at p.8). He does not argue that he has been rejected or that he was considered during the period of this lawsuit.

- 8 -

924180v3

to make an application for a position, fruitless or a futile gesture. <u>Int'l Bhd. of Teamsters v.</u>
<u>United States</u>, 431 U.S. 324 (1977).  Instead, Penn's website provides a clear, simple and
transparent process for all applicants.  Recruiters will forward resumes to the hiring officers for a
position an individual has "expressed interest in."  (Exhibit 4).  Parker chose not to "express
interest in" any specific position but rather he electronically "dropped" his resume into a
database with thousands of other resumes.  (Exhibit 2, ¶ 13).  It is transparent and foreseeable
that when Parker made no application for a specific job, his resume would languish in a
communal pool of thousands of other unsolicited resumes.  That fact is simply not actionable,
nor is it conceivably discriminatory.

Parker's failure to apply for any specific position leaves no genuine issue of material fact
for trial.  Penn, therefore, is entitled to summary judgment as a matter of law on each of Parker's
remaining claims.

### 2. Penn did not reject Parker prior to his filing the EEOC charge

In order to prove race or gender discrimination Parker must also show that, despite his
qualifications, he was rejected for a position.  The undisputed evidence shows that Penn did not
reject Parker for a position between July 16, 2001, when he posted his resume, and October 23,
2001, when he filed his EEOC charge.  Parker has admitted, in his Amended Complaint, that
"Plaintiff to this day has not received even one call for an interview."  (Amend. Compl. ¶ 7).  In
fact, the only communication between Parker and Penn occurred on July 16, 2001, when he
received the electronic e-mail confirmation after he submitted his resume, which in pertinent part
stated:

> Thank you for submitting your resume to the University of
> Pennsylvania.
>
> If it is felt that a personal meeting would be appropriate, you will
> be contacted within the next thirty (30) days.

924180v3

> Otherwise, this will be your only communication from us.
>
> Again, thank you for your interest in the University of Pennsylvania.

(Exhibit 3). These facts establish that Penn did not reject him for a position. The simple fact is that Parker was never considered for any position for which he did not apply. (Exhibit 2, ¶ 11).

It is undisputed that Parker was never rejected during the period covered by this action. But he has already made the argument that <u>after</u> he filed this lawsuit he applied for forty-eight (48) jobs. (Exhibit 5, ¶ 28). He also provided the Court with post-complaint rejection letters. (Exhibit 7). Again, the fact that Parker specifically applied for jobs at Penn after he commenced this action[8] has no bearing on this matter other than to make clear there was no such application <u>before</u> the lawsuit was filed. Since Penn never rejected Parker for any position at Penn during the period covered by this action, Parker cannot establish the third element necessary to prove his *prima facie* case. Thus, Penn is entitled to summary judgment as a matter of law on each of the remaining counts.

      3.     **Parker's resume did not state that he was Caucasian or male**

It is axiomatic in a disparate treatment[9] case that the plaintiff must show that the employer relied on discriminatory criteria to make its adverse employment decision. Parker must prove that Penn failed to consider his resume and hire him because he is Caucasian male. Here the facts are clear and simple.

---

[8] In fact, the applications were made after Penn filed its motion to dismiss arguing this same point.

[9] It appears that Parker may also be asserting a disparate impact claim, though its basis is unclear. It is undisputed that Penn has no hiring "preference" in place for any individual. Exhibit 2, ¶¶ 18-20; Exhibit 4. Thus, there is no basis for any claim of disparate impact as to Penn's failure to consider his resume.

- 10 -

924180v3

First and foremost, he was not considered for any position because he applied for none. Moreover, Parker's resume does not state his race or sex. (Exhibit 1). In fact, only by his name, could a recruiter — had he or she considered his resume — have surmised his gender. Even if Penn had considered his resume, a recruiter could not have known that Parker was Caucasian. (Exhibit 2, ¶ 16). No reasonable database search could have excluded him either because of his race or sex. In any event, there was no database search conducted, and no rejection occurred.

Penn is entitled to summary judgment as a matter of law because it could not have discriminated against Parker on the basis of his (unknown to Penn) race or sex, because his race and sex were undisclosed on his resume.

### C.    Parker's Retaliation Claim Fails As A Matter Of Law

Parker's retaliation claim fails because: (1) Penn never took any adverse employment action against him, and (2) because it never took any fact from his resume into account. To establish a *prima facie* case of retaliation, Parker must show that: Penn made an adverse employment decision against him because of some protected activity. Bartholomew v. St. Luke's Hosp., No. 02-2876, 2003 U.S. Dist. Lexis 7695, *16 (E.D. Pa. Apr. 30, 2003) (citing Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001).

As set forth above, Penn's failure to hire Parker arose not from any rejection but from his failure to apply for a position. Since his resume was never considered by any recruiter or hiring officer, the fact that he declared his earlier Penn employment on the resume is irrelevant. Part of having not been considered for any position for which he did not apply is, necessarily, that no consideration was given to his prior employment.[10]

---

[10] Parker alleges that the retaliation is based on his 1992-1993 employment, which is too remote in time. *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir. 1982). In any event, there is no causal connection between his employment of 10 years ago and the fate of his 2001 resume. Parker has expanded his retaliation claim in his

(continued ...)

- 11 -

924180v3

Because no *prima facie* case has been established, this claim likewise fails, and Penn is entitled to summary judgment.

### D.   Even If The Court Finds That Parker Established His Prima Facie Case, Penn Is Still Entitled To Summary Judgment Because It Has Articulated Legitimate And Nondiscriminatory Reasons For Its Failure To Hire Parker

Under McDonnell Douglas, after a plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate and nondiscriminatory reason for its employment action. McDonnell Douglas v. Green, 411 U.S. at 802. Penn has shown that Parker cannot establish his *prima facie* case. However, even if it had not, it would still be entitled to summary judgement because it has established — by undisputed fact — that it had a legitimate and nondiscriminatory reason for its failure to hire Parker in 2001. Hoechstetter v. City of Pittsburgh, 248 F.Supp.2d 407 (W.D. Pa. 2003) (holding that plaintiffs failed to establish that City's articulated reasons for its failure to hire plaintiffs were pretextual). The McDonnell Douglas burden-shifting analysis is applicable at the summary judgment stage. Id.; Bartholomew v. St. Luke's Hosp., 2003 U.S. Dist. Lexis at *18-20 (granting summary judgment to employer on age discrimination, sex discrimination, retaliation and hostile work environment claims because plaintiff failed to show that employer's articulated reasons were pretext).

The reason Penn did not hire Parker is because he had not applied for any specific position, and it did not conduct any search of the resumes of non-applicants for positions being filled. (Exhibit 2, ¶¶ 6, 8, 11, 14). There are so many resumes in Penn's database that a "key

---

(… continued)
recently filed Motion for Partial Summary Judgment to include matters relating to internet defamation which were raised in a different lawsuit in which Penn was not a party and which was dismissed by Judge Kelly. Parker v. John Doe #1, et al., U.S.D.C. (E.D. Pa.), No. 02-7215 (pp.40-50); Penn's decisions regarding this suit and its reaction to Parker's demeanor on the telephone (pp. 50-52); and Penn's motion for a psychiatric evaluation, which was granted and led to the dismissal of his ADA claims (pp.52-4). None of this could be actionable retaliation under the circumstances of this case.

- 12 -

924180v3

word" search for several of the words found on Parker's resume returned thousands of qualified resumes of which Parker's resume was one. (Exhibit 2, ¶ 12). Moreover, Donna Showell-Brown the individual responsible for the resume collection database stated "given the large volume of applicants applying for a specific job, recruiters rarely consider applicants who do not apply for a specific job." (Exhibit 2, ¶ 8). No such applicants were considered during the relevant time frame. (Exhibit 2, ¶ 14).

Given the quantity of the resumes in Penn's database no reasonable trier of fact could find that there is a genuine issue with respect to the Penn's proffered reason for its failure to hire. Hoechstetter v. City of Pittsburgh, 248 F. Supp.2d 407 (W.D. Pa. 2003). Consequently, Penn is entitled to judgment as a matter of law.

## IV.   CONCLUSION

For all of the foregoing reasons, Penn respectfully requests that the Court grants their Motion for Summary Judgment and enters judgment in Penn's favor and against Plaintiff, Gordon Roy Parker.


Date:   June 5, 2003

*Crystal D. Deazle*
John M. Myers (Pa. Id. No. 06642)
Crystal D. Deazle (Pa. Id. No. 87901)

MONTGOMERY, McCRACKEN,
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone No.:    (215) 772-1500
Facsimile No.:    (215) 772-7620

Attorneys for Defendant
UNIVERSITY OF PENNSYLVANIA


- 13 -

924180v3