IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Gordon Roy Parker | : |
| Plaintiff | : |
| v. | : NO. 02-CV-567 |
| University of Pennsylvania | : |
| Defendant | : |

**EXPLANATION AND ORDER**

**Anita B. Brody, J.**                                                                                   **November    , 2003**

Facts

  Plaintiff Gordon Roy Parker, a white male, submitted his resume to defendant University of Pennsylvania's ["Penn"] employment database on July 16th, 2001. Penn accepts resume submissions via the internet, and potential employees submit applications by following the instructions on Penn's Human Resources web page. The web page explains to applicants that, "recruiters search the resume database and forward your resumes to the Hiring Officers for positions you have expressed interest in if you meet the minimum qualifications." Applicants may either apply for specific positions, or simply submit their resumes into a database with all of the other submitted resumes. The database is searchable by key word and recruiters can consider

applicants who do not apply for a specific job posting.[1]

Parker did not specify any particular position for which he was applying when he submitted his resume. In response to the submission of his resume, he received an automated email response stating,

> Thank you for submitting your resume to the University of Pennsylvania. If it is felt that a personal meeting would be appropriate, you will be contacted within the next thirty (30) days. Otherwise, this will be your only communication from us. Again, thank you for your interest in the University of Pennsylvania. We hope that you are successful in finding a rewarding position. Please take a moment to fill out our Equal Opportunity Employment Form.

Parker was never contacted by defendant about employment prior to the filing of this lawsuit.[2] Penn claims that,

> During the several months after Mr. Parker posted his resume, no positions for which Mr. Parker self identifies as being qualified for (sic) were filled from applicants found using this data base search capability. This is because qualified applicants were found among those people who actually applied for the specific jobs for which there were vacancies.

Donna Showell-Brown Aff., ¶ 11.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2001, alleging discrimination in violation of Title VII on the basis of (1) religion, (2) race, and (3) retaliation. Plaintiff also alleged discrimination in violation of the

---

[1] According to defendant's pleadings and the accompanying affidavit of Donna Showell-Brown, Manager of Recruitment and Staffing at Penn, recruiters rarely consider applicants who do not apply for a specific job posting.

[2] Plaintiff also claims to have faxed his resume to the UPenn Health System on July 17, 2001. Defendant has not responded to this allegation. It is my understanding that the only way to apply for employment at Penn is through the Human Resources website, and that faxing a resume to Penn should therefore not be considered applying.

2

Age Discrimination in Employment Act on the basis of age and retaliation and discrimination in violation of the Americans with Disabilities Act on the basis of disability and retaliation. The EEOC issued a right-to-sue letter on these claims on December 28, 2001. There is no evidence that the EEOC has issued any further right-to-sue letters to plaintiff since December 28, 2001.

On February 4, 2002, plaintiff filed a complaint in this court alleging discrimination based on race, gender, retaliation, and disability. His complaint states that Penn discriminated against him on the basis of race and gender by virtue of its affirmative action policy. The charge of retaliation alleges that, "at any given point in time, including the times in controversy in this action. . . [a]t least one position at Penn is 'poisoned' by retaliation discrimination." The disability claim, which alleges that plaintiff was discriminated against because he is bipolar, was dismissed with prejudice by order on May 22, 2003.

Plaintiff has filed a motion for partial summary judgment and defendant has filed a motion for summary judgment. Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law. Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).

Discussion

*Intentional Employment Discrimination under Title VII*

Plaintiff alleges intentional discrimination based on race and gender under Title VII. Plaintiff did not allege gender discrimination in his EEOC complaint and has not received a

right-to-sue letter on that claim.³ When a plaintiff fails to raise a Title VII claim before the EEOC, the district court lacks subject matter jurisdiction to hear it. 42 U.S.C. § 2000e-5. Plaintiff's claim of gender discrimination is therefore dismissed.

The elements a plaintiff must establish in a claim of racial discrimination under Title VII are set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973):

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

Plaintiff has made out a prima facie case of employment discrimination by satisfying each of the required four prongs:

1. The first prong of the test is that a plaintiff belong to a racial minority. This prong can be satisfied by whites as well as "racial minorities." Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999) ("All that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII"). Therefore, plaintiff satisfies the first prong.

2. The second prong of the test requires that plaintiff apply to a position for which he

---

³I take judicial notice of plaintiff's EEOC claim. It is attached to this Order.

is qualified. Plaintiff followed all instructions on defendant's website for the submission of his resume to Penn's database. "Failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." <u>EEOC v. Metal Service Co.</u>, 892 F.2d 341 (3d Cir. 1990); <u>see</u> <u>also</u> <u>Lowe v. Monrovia</u>, 775 F.2d 998 (9th Cir. 1985) (plaintiff found to have "applied" when she filed an application, despite the fact that her application was never reviewed by employer because of policy that suspended all applications for a set period before they became eligible. The court explained that any reason the employer had for why its system did not function as planned could help to rebut the presumption of discrimination arising from the prima facie case, but did not rebut the establishment of the prima facie case itself.); <u>Blow v. San Antonio</u>, 236 F.3d 293 (5th Cir. 2001) (plaintiff found to have applied because she submitted an application, despite the fact that her application was never considered because another applicant was hired before plaintiff's application reached employer.) Despite defendant's contention that plaintiff did not "apply" because his resume was not reviewed by personnel, plaintiff's actions meet the second prong of the prima facie test.

3. The third prong of the test requires that plaintiff be rejected for employment. When plaintiff submitted his resume to defendant's website, he received a form e-mail stating, in part, "If it is felt that a personal meeting would be appropriate, you

will be contacted within the next thirty (30) days." Plaintiff was not contacted within thirty days of submitting his resume. The Third Circuit has understood a failure to hire as "rejection" for purposes of Title VII employment discrimination cases. See <u>Hampton v. Borough of Tinton Falls Police Dep't</u>, 98 F.3d 107, 112 (3d Cir. 1996); <u>Waldron v. SL Indus.</u>, 56 F.3d 491, 494 (3d Cir. 1995). Defendant's failure to hire plaintiff constitutes a rejection in satisfaction of the third prong.

4. The fourth prong requires that, after plaintiff is rejected, positions remain open for which plaintiff is qualified. Defendant has not disputed plaintiff's contention that, after plaintiff's rejection for employment, positions remained open at Penn for which he was qualified. Plaintiff therefore satisfies the fourth prong.

By meeting these four requirements, plaintiff has met the initial burden of establishing a prima facie case of employment discrimination.

Once a plaintiff has met this initial burden, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for plaintiff's rejection. <u>McDonnell Douglas</u>, 411 U.S. at 802. Defendant claims to have failed to consider Parker's application because of its resume reviewing procedures: "The reason Penn did not hire Parker is because he had not applied for any specific position, and it did not conduct any search of the resumes of non-applicants for positions being filled." Defendant's Motion for Summary Judgment at 12.[4]

---

[4] The United States Supreme Court has explained how to meet this burden: "defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the

Once Defendant has articulated a legitimate, non-discriminatory reason for failing to hire a plaintiff, the burden returns to the plaintiff to prove that the proffered reason is pretextual. McDonnell Douglas, 411 U.S. at 804.  Plaintiff is entitled to discovery which may assist in proving this.  Defendant has already provided plaintiff with the sworn affidavit of Donna Showell-Brown, which supports defendant's statement of facts.  Plaintiff may seek further discovery related to the fate of his resume when it was submitted to Penn in July, 2001.[5]

*Employment Discrimination under a Disparate Impact Theory*

In addition to alleging intentional employment discrimination on the basis of race under Title VII, plaintiff alleges discrimination under a Title VII disparate impact theory.[6]  In order to have standing to assert disparate impact, plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged action. See Newark Branch, NAACP v. Harrison, 907 F.2d

---

prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Texas Dept of Community Affairs v. Burdine, 450 U.S. 248, 254-5 (1981). "The employer's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action." Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3rd Cir. 2003).

[5]Neither of plaintiff's outstanding motions to compel request information that would assist him in meeting his burden of showing that defendant's stated reason for failing to hire him is pretextual.  One of these motions seeks a broad array of information related to Penn employees and affirmative action at Penn (Docket #26), and the other seeks information related to alleged gender disparities at Penn (Docket #34).  The first motion is denied because it seeks irrelevant information.  The second motion is denied because I am dismissing plaintiff's gender discrimination claim and the motion requests information beyond the scope of discovery.

[6]In addition to banning intentional discrimination, Title VII also bans neutral employment practices that have a disparate impact upon protected groups of employees, unless those practices are shown to be justified by business necessity. Griggs v. Duke Power Co., 401 U.S. 424 (1971).

1408, 1413 (3d Cir. 1990).  Plaintiff does not have standing to allege employment discrimination under a disparate impact theory if he cannot make out a claim that he was conceivably harmed by defendant's hiring policies.  Therefore, if plaintiff cannot prove that defendant considered him for employment, he does not have standing.  I will defer resolution of the disparate impact claim and consider it in conjunction with the intentional discrimination claim.

*Retaliatory Employment Discrimination*

Plaintiff alleges that defendant failed to investigate his internal grievance in good faith.  A prima facie case of retaliation is established similarly to a prima facie case of employment discrimination: a plaintiff must show that (1) he or she engaged in a protected form of activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action.  If the plaintiff is able to establish the prima facie case, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.  If the employer satisfies that burden, the plaintiff must then prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003).  Plaintiff has made out a prima facie case of retaliation discrimination by alleging that defendant failed to hire him because he filed an internal grievance.  Defendant has stated a legitimate, non-retaliatory reason for failing to hire plaintiff: that his application was never reviewed.  Plaintiff now must prove that defendant's stated reason is pretextual.  The evidence plaintiff will need to prove pretext on the retaliation claim is the same that he will need to prove pretext on the employment

discrimination claim.  I will therefore defer review of this retaliation claim until discovery is concluded.

**O R D E R**

**AND NOW**, this      day of November, 2003, it is **ORDERED** that:

- Plaintiff's Motion to Compel Discovery Pursuant to Rules 26 and 37 (Docket #26) is **DENIED**.

- Plaintiff's Motion to Compel Discovery Pursuant to Rule 37 (Docket #34) is **DENIED**.

- Plaintiff's Motion for New Scheduling Order (Docket #32) is **GRANTED**. A new scheduling order will be issued separately from this order.

- Plaintiff's Motion for Reconsideration and for Evidentiary Hearing Certificate of Service (Docket #31) is **DENIED** as moot. The motion requested reconsideration of my order scheduling a teleconference regarding Defendant's Motion for Sanctions and Plaintiff's Motion to Compel Discovery, and requested, in the alternative, an evidentiary hearing. The teleconference occurred on May 22, 2003.

- Defendant's Motion for Summary Judgment is granted in part and denied in part. Defendant's Motion for Summary Judgment on Plaintiff's claim relating to gender discrimination is **GRANTED**. As to the other claims, Defendant's Motion for Summary Judgment (Docket #43) is **DENIED** without prejudice to reassert at a later stage of the litigation.

- Plaintiff's Motion for Partial Summary Judgment (Docket #42) is **DENIED**.


_____
ANITA B. BRODY, J.


Copies **FAXED** on _____ to:    Copies **MAILED** on _____ to: