IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                    :
                                      :
              Plaintiff,              :        CASE NO.: 02-cv-567
                                      :
       v.                             :
                                      :
UNIVERSITY OF PENNSYLVANIA, a         :
Pennsylvania nonprofit corporation,   :
                                      :
              Defendant.              :
                                      :

## O R D E R

**AND NOW**, this _____ day of _____, 2004, upon consideration of the Motion

of the University of Pennsylvania for Summary Judgment and plaintiff's response thereto, it is

hereby

ORDERED that the Motion is GRANTED, judgment is entered in favor of Defendant

and against the Plaintiff, and all remaining counts in the Amended Complaint are dismissed with

prejudice.

**BY THE COURT:**

_____
Honorable Anita B. Brody, J.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                    :
                                      :
            Plaintiff,                :          CASE NO.: 02-cv-567
                                      :
       v.                             :
                                      :
UNIVERSITY OF PENNSYLVANIA, a         :
Pennsylvania nonprofit corporation,   :
                                      :
            Defendant.                :
                                      :

## THE UNIVERSITY OF PENNSYLVANIA'S
## MOTION FOR SUMMARY JUDGMENT

Defendant the University of Pennsylvania ("Penn") moves for summary judgment under

F.R.C.P. 56 on the basis set forth in the accompanying memorandum.

Respectfully submitted,

Date:   May 14, 2004                  _____
                                      John M. Myers (Pa. Id. No. 16642)
                                      Jonathan H. Pyle (Pa. Id. No. 89887)

                                      MONTGOMERY, McCRACKEN,
                                        WALKER & RHOADS, LLP
                                      123 South Broad Street
                                      Philadelphia, PA  19109
                                      Telephone No.:      (215) 772-1500
                                      Facsimile No.:      (215) 772-7620

                                      Attorneys for Defendant
                                      UNIVERSITY OF PENNSYLVANIA

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GORDON ROY PARKER, | : | |
| | : | |
| Plaintiff, | : | CASE NO.: 02-cv-567 |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA, a | : | |
| Pennsylvania nonprofit corporation, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### THE UNIVERSITY OF PENNSYLVANIA'S MEMORANDUM
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The University of Pennsylvania ("Penn") submits this memorandum in support of its

Rule 56(c) motion for summary judgment.  There is no genuine issue as to any material fact and

Penn is entitled to judgment as a matter of law.

## I.    INTRODUCTION

Mr. Parker has summarily described the basis of his lawsuit far better than can be

paraphrased:

> The issue of damages in this lawsuit is not about his inability to get
> any job, but instead to tap into the far superior compensation and
> benefits structure offered by the University of Pennsylvania.[1]

In short, Parker asks this Court to short circuit a wholly legitimate hiring process and install him

in some job — any job — by judicial fiat.

---

[1] Plaintiff's Opposition To Defendant's Motion To Compel Plaintiff To Submit To An Independent Medical
Examination ¶ 10, attached hereto as Exhibit 1.

Parker alleges that Penn discriminated against him based on his race (Count I) and gender (Count II) when it failed to hire him in July 2001, after he had electronically submitted his resume to Penn's human resources database at URL www.hr.upenn.edu/jobs. Parker further alleges that Penn's Affirmative Action policy, as implemented in the hiring process, constitutes an employment practice that has a disparate impact on Caucasian men and therefore violates the law. Additionally, Parker asserts a continuing violation theory of retaliation (Count III) based on his 1992-1993 Penn employment. The Court has previously dismissed Parker's disability discrimination claim (Count IV); therefore, that claim is not at issue in the instant motion for summary judgment.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

The facts are relatively simple and undisputed. Parker never applied for a position at Penn, and Penn neither interviewed him nor rejected him before he filed his EEOC charge. Moreover, even if Parker had applied, Parker's resume did not self-identify him as a Caucasian male. Since Parker was never considered, Penn could not have retaliated. In any event, it did not retaliate.

The essential, undisputed, facts are:

1.   On July 16, 2001, Parker electronically submitted his resume to Penn's human resources database via the Internet. (Amend. Compl. ¶ 7; Exhibit 2, Parker's Resume posted to the website).

2.   He did not apply for, or express interest in, any open or available position.

(Exhibit 3,[2] Affidavit of Donna Showell-Brown ¶ 6).  Parker has admitted this.  (Exhibit 4 ¶¶ 28, 30, Exhibit 5 at 29 lines 12-15, 31 lines 6-12).[3]

3.   Parker received an electronic confirmation after he submitted his resume, that in pertinent part stated:

> Thank you for submitting your resume to the University of Pennsylvania.
>
> If it is felt that a personal meeting would be appropriate, you will be contacted within the next thirty (30) days.
>
> Otherwise, this will be your only communication from us.
>
> Again, thank you for your interest in the University of Pennsylvania....

(Exhibit 6,[4] Electronic Confirmation).

4.   Penn's human resources homepage states that "recruiters search the resume database and forward your resumes to the Hiring Officers for *positions you have expressed interest in* if you meet the minimum qualifications.  (Exhibit 7,[5] Penn's Human Resources homepage (emphasis added)).

5.   Penn's hiring system allows for the possible consideration of an applicant in two different ways: first, one may apply for a specific job, identified on the website; second, if no

---

[2] This Affidavit was previously attached as Exhibit C to Penn's Motion for Sanctions For Plaintiff's Refusal to Obey the April 1, 2003 Order.

[3] *See also* Plaintiff's Motion for Partial Summary Judgment (June 4, 2003, Docket #42) at 2.

[4] This Electronic E-Mail Confirmation was previously attached as Exhibit C to Penn's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

[5] http://www.hr.upenn.edu/jobs/howtoapply.asp.

specific application is made, then the resume simply resides in Penn's database along with thousands of other resumes.  (Exhibit 3 ¶ 7).

6.  The database of resumes in which Parker's resume is found is searchable by Penn recruiters, using a "key word" type search, should the need arise.  (*Id.* ¶ 10).

7.  Given the large volume of qualified applicants applying for specific jobs, recruiters can, but rarely do, consider applicants who do not apply for a specific job posting.  (*Id.* ¶ 8).

8.  During the several months after Parker posted his resume, no position for which he self-identifies as being qualified was filled from applicants found using the database search capability.  (*Id.* ¶ 11).

9.  This is because qualified applicants were found among those individuals who actually applied for the specific jobs for which there were vacancies.  (*Id.* ¶ 11).

10. There are so many resumes in Penn's database that the "key word" search method, for positions not requiring particularly unique skills or prerequisites, results in so many "matches" that this kind of search is not useful.  (*Id.* ¶ 12).

11. To illustrate the point, Donna Showell-Brown, Manager of Recruitment and Staffing, ran several searches using various key words taken from Parker's resume.  The chart below shows the results of her search:

| KEYWORD | NUMBER OF RESUMES |
|---|---|
| Secretary administrative internet web development design | 1 [Mr. Parker's] |
| Secretary | 10,375 |
| Administrative | 49,144 |
| Internet | 27,607 |
| Web development | 2,101 |
| Web design | 2,578 |

(*Id.* ¶ 12).

12. It is not practical or necessary, nor is it the practice, for Penn recruiters to use the database for filling vacancies in this way. (*Id.* ¶ 13).

13. Each vacancy filled around the time of Parker's posting to Penn's website was filled from the pool of people who actually applied for a specific job. (*Id.* ¶ 14).

14. None of the vacancies around the time of Parker's posting to Penn's website was filled by an applicant who had not applied for the specific job. (*Id.* ¶ 11).

15. Parker was not interviewed for any Penn job prior to his filing of his EEOC complaint. (*Id.* ¶ 7; Amend. Compl. ¶ 7).

16. Parker did not self-identify, in his resume or in any other way, that he is a Caucasian man. (Exhibit 3 ¶ 16).

17. Parker's resume posting would have been treated no differently had he self-identified as a non-Caucasian or a female. (*Id.* ¶¶ 18, 19).

18. The Health System has no record of receiving a faxed resume from plaintiff on or around July 17, 2001. (Exhibit 8, Declaration of Diane Hannah-Wilson ¶ 11).

19. In July 2001, the Health System's web-based job posting system was the primary method for applying for jobs with the Health System. (*Id.* ¶ 5).

20. No applicant who faxed a resume or application to the Health System would have been considered for employment unless his or her contact information and job category information had been entered into the Health System's computer database. (*Id.* ¶ 10).

21. The Health System's computer database contains no record of any job application from plaintiff between June 1, 2001, and August 31, 2001. (*Id.* ¶ 12-13). Diane Hannah-Wilson, who was the Director of Staffing at the Health System during this period, has no memory of receiving an application from plaintiff. (*Id.* ¶ 14).

22. Penn's hiring policy is to insure that, in each case, it hires the best candidate for the position, regardless of race, gender or actual or perceived disability. (Exhibit 3 ¶ 20). No hiring preference is given to women or minority candidates.

23. Penn is an Equal Opportunity Employer. As set forth on its Human Resources website:

> **An Equal Opportunity Employer**
> The University of Pennsylvania is an equal opportunity
> employer and does not discriminate on the basis of race,
> color, sex, sexual preference, age religion national or ethnic
> origin, disability or veteran status.

(Exhibit 7).

24. Since Parker was not considered for any open position — because of his failure to apply — no consideration was or could have been given to his prior employment relation with Penn, which was in 1992-1993.

25. There is no evidence to suggest that any conduct or inaction on the part of Penn was an act of retaliation or intended as an act of retaliation.

## III.  PROCEDURAL HISTORY

On November 3, 2003, this Court denied Parker's outstanding motions to compel discovery and stated that:

> Once Defendant has articulated a legitimate, non-discriminatory
> reason for failing to hire a plaintiff, the burden returns to the
> plaintiff to prove that the proffered reason is pretextual.
> *McDonnell Douglas*, 411 U.S. at 804. Plaintiff is entitled to
> discovery which may assist in proving this. Defendant has already
> provided plaintiff with the sworn affidavit of Donna Showell-
> Brown, which supports defendant's statement of facts. Plaintiff
> may seek further discovery related to the fate of his resume when it
> was submitted to Penn in July, 2001.

November 3, 2003 Order ("November Order") at 7, attached hereto as Exhibit **9**.

Parker had six months to conduct discovery on the issue of pretext. On November 24, 2003, Parker served Plaintiff's Fourth Request For Production Of Documents,[6] in which he requested documents relating to an unrelated case, *Parker v. John Doe #1, et al.*, U.S.D.C. (E.D. Pa.) No. 02-7215 (Hon. James McGirr Kelly).[7]

In addition to requesting this irrelevant information, Parker asked for confidential information concerning Penn employees whose jobs were terminated or who had filed internal grievances, information on "special effort searches" under Penn's affirmative action program since July 16, 2001, and correspondence relating to Parker's applications for employment with Penn in 1993 and after July 16, 2001. None of this discovery related to the question posed by the court: whether Penn's "proffered reason is pretextual" or "the fate of his resume when it was submitted to Penn in July, 2001." November Order at 7.

Penn responded to this discovery by informing plaintiff that no special effort searches had been conducted since July 16, 2001. Parker did not move to compel any further responses.

On March 12, 2004, Parker tried again, serving his Third Set of Interrogatories, Second Set of Requests For Admissions, and Fifth Request For Production Of Documents.[8] Parker asked for information relating to Penn's advertising of job positions, its handling of faxed resumes, open staff positions at the Health Center, aspects of Penn's affirmative action policy,

---

[6] Plaintiff's Fourth Request For Production Of Documents is attached hereto as Exhibit 10.

[7] In that case, plaintiff served a subpoena on Penn for the identity of an individual who allegedly threatened Parker over the Internet using a computer on Penn's campus. At the hearing on the motion to enforce the subpoena, the Court heard the testimony of witnesses from Penn who testified that the information Parker requested was not available. The Court dismissed the case on February 25, 2003. After Penn objected to the discovery requests in the November 24, 2003 document requests, Parker refiled his "John Doe" case and again served a subpoena on Penn for information about the identity of the John Doe defendant, which Penn had already established it does not have. *Parker v. Learn The Skills Corp.*, U.S.D.C. (E.D. Pa.) No. 03-6936 (Hon. James McGirr Kelly).

[8] These discovery requests are attached hereto as Exhibit 11.

Parker's alleged faxing of his resume to the Health System in July 2001, demographics of Penn's undergraduate class, and unrelated legal proceedings involving Penn. None of this discovery related to the question posed by the court: whether Penn's "proffered reason is pretextual" or "the fate of his resume when it was submitted to Penn in July, 2001." November Order at 7. Parker's alleged faxed resume is not at issue in this case; rather, what is at issue is his submission of his resume on-line to the University's web site. *See* November Order at 2 n.2.

Though the discovery sought was entirely irrelevant, Penn answered those requests that were arguably related to this lawsuit. Penn produced a document showing a search that was performed on the Health System's human resources database which showed that the Health System had no record of receiving any job application from Parker in July 2001. Plaintiff subsequently filed a motion to compel, on April 15, 2004, without stating how Penn's answers were incomplete.[9]  Discovery closed on April 16, 2004.

Plaintiff has explained his failure to take discovery "related to the fate of his resume when it was submitted to Penn in July, 2001,"[10] by admitting in a recent Sur-Reply that:

> Plaintiff knows of no "issue" regarding the fate of his resume . . . .
> Consequently, there was nothing to ask because, as Defendant
> points out, Plaintiff has their answer.

Plaintiff's Sur-Reply To Penn's Opposition To Plaintiff's Motion To Compel Discovery Pursuant To Federal Rules 26 and 37, at 2, attached hereto as Exhibit 13. Plaintiff thus admits that there are no issues of fact with respect to any of his remaining causes of action.

---

[9] Plaintiff's motion to compel is attached hereto as Exhibit 12.

[10] November 2003 Order at 7.

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Penn briefed the summary judgment standard in its earlier Motion For Summary Judgment (June 5, 2003, Docket #43), which is incorporated as if fully set forth herein.

Penn is entitled to summary judgment in this case because (1) Parker did not apply for any position for which he was qualified; (2) Penn never rejected him for a position prior to his filing an EEOC complaint; (3) there is no causal connection between any protected activity and Penn's failure to hire; and (4) none of Penn's conduct or inaction with respect to Parker's resume was retaliatory, nor is its explanation a pretext for discrimination.

### B.    There Are No Issues Of Disputed Fact

Plaintiff admits that there are no factual issues regarding his surviving claims.[11]  Plaintiff asserts, however, that there is a factual issue regarding whether he faxed his resume to the Health Center on July 17, 2001.  Whatever plaintiff may or may not have done, the Health Center has no record of having received any such resume; plaintiff's name was not entered in the Health System's human resources database on or around July 17, 2001, where it would have been entered if plaintiff had submitted a proper job application.[12]  Thus, whether Plaintiff faxed his resume or not, he never applied or was considered for a Health System position.  This alleged fax, which was not even mentioned in plaintiff's original or amended complaint, is simply a second example of plaintiff attempting to fuel a lawsuit without applying for a job.

---

[11] Plaintiff's Sur-Reply To Penn's Opposition To Plaintiff's Motion To Compel Discovery Pursuant To Federal Rules 26 and 37, at 2.

[12] See Declaration of Diane Hannah-Wilson, Exhibit 8 ¶¶ 4-14.  Plaintiff asserts that Penn's denial of plaintiff's request for admission on the issue of the faxing of plaintiff's resume creates a "triable issue of fact."  Exhibit 13 at 6. If Penn had answered "Admitted," it would have made no difference: there is still no evidence that the Health System considered any application for employment from plaintiff on or around July 17, 2001.

**C.    Parker's Claims Of Race And Gender Discrimination Fail Because, Despite Being Given Additional Time For Discovery, He Has Not Established A Prima Facie Case.**

In order for Parker to survive this motion, he must show that he can satisfy all of the elements of a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, Parker has the initial burden of establishing a *prima facie* case of discrimination. *Id.* In order to establish his *prima facie* case of race and gender discrimination in this failure-to-hire context, Parker must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after the plaintiff was rejected, the position remained open and the employer continued to seek applicants with plaintiff's qualifications. *Id.*; *Texas Dep't Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Hoechstetter v. City of Pittsburgh*, 248 F. Supp. 2d 407, 409-10 (W.D. Pa. 2003). The standard for establishing a *prima facie* case of reverse discrimination in a failure to hire context is the same as the standard in any other case where an individual alleges discrimination. *Iadimarco v. Runyon*, 190 F.3d 151, 160-61 (3d Cir. 1999).

Parker cannot meet the second, third or fourth elements of his *prima facie* case. Parker did not apply for any position at Penn, he was not rejected for any position; consequently, no such position remained open. Consequently, Parker fails to satisfy the "application," "rejection" and "position remained open" elements of the *prima facie* case of discrimination.

In denying Penn's earlier motion for summary judgment, this Court held that Parker met the prima facie test for discrimination on the grounds that any "refusal to hire" constituted a rejection within the meaning of *McDonnell Douglas*. November Order at 5-6. However, since that earlier decision, the Equal Employment Opportunity Commission, with other agencies, has published a proposed list of questions and answers as guidance to the Uniform Guidelines on

- 10 -

Employee Selection Procedures (UGESP) which specifically address electronic application

procedures and are directly contrary to that conclusion.  The answers, which are valuable

guidance, provide that:

> In order for an individual to be an applicant in the context of the
> Internet and related electronic data processing technologies, the
> following must have occurred:
> (1)    The employer has acted to fill a particular position;
> (2)    The individual has followed the employer's
>        standard procedures for submitting applications;
>        and
> (3)    The individual has indicated an interest in the
>        particular position.

69 Fed. Reg. 10152, 10155 (Mar. 4, 2004), attached as Exhibit 14.  The EEOC distinguishes

between applicants and "'[p]assive' job seekers [who] post resumes online and wait and see if

recruiters or employers seek them out," *id.* at 10154, such as the plaintiff here.  The EEOC also

noted that posting a resume does not count as applying:

> By posting a resume, the individual is advertising her credentials to
> the world and indicating a willingness to consider applying for new
> positions that may be brought to her attention.  The individual *is*
> *not indicating an interest in a particular position* with a specific
> employer.

*Id.* at 10156 (emphasis added).  Indications of interest must be specific:

> [E]ven if the individual expresses an interest in a whole
> category of positions in response to an employer's solicitation – for
> example, marketing opportunities – the individual is not an
> applicant but is identifying the kinds of positions in which she may
> be interested.  She is not indicating an interest in a particular
> position with a specific employer.  It is only with respect to a
> particular position that an individual can assess her interest and
> choose whether or not to apply.
>    If an individual submits a resume or personal profile
> repeatedly to the same employer (for example, by adding
> numerous online job listings to her "shopping cart") or simply
> sends resumes (for example, by using automated online tools that
> identify job listings and submit resumes), the individual again is

> identifying the kinds of positions in which she is interested and is
> not automatically an applicant.

*Id.*

This Court noted in its November Order that:

> Failure to formally apply for a job opening will not bar a Title VII
> plaintiff from establishing a prima facie claim of discriminatory
> hiring, as long as the plaintiff made every reasonable attempt to
> convey his interest in the job to the employer.

*EEOC v. Metal Serv. Co.*, 892 F.2d 341 (3d Cir. 1990). In this case, plaintiff did not make

"every reasonable effort to convey his interest in the job to the employer." Plaintiff has admitted

that he "could have clicked and applied for a job" on Penn's human resources web site, Exhibit 5

at 31 lines 6-12, but instead he chose to be a "passive" job seeker and merely post his resume.

As the EEOC's proposed UGESP guidance illustrates, whether plaintiff has "has indicated an

interest in the particular position" and "followed the employer's standard procedures for

submitting applications," Exhibit 14 at 10155, is especially important in the internet age, when

employers are overloaded with electronic job applications. Because Plaintiff did not apply for a

position and was not rejected, he cannot now make out a *prima facie* case. Consequently, Penn's

Motion for Summary Judgment should be granted.

**D.    Even If The Court Finds That Parker Established His *Prima Facie* Case,
Which It Should Not, Penn Is Still Entitled To Summary Judgment Because
It Had Legitimate And Nondiscriminatory Reasons For Its Failure To Hire
Parker**

Under *McDonnell Douglas*, after a plaintiff makes out a *prima facie* case of discrimina-

tion, the burden shifts to the defendant to articulate a legitimate and nondiscriminatory reason for

its employment action. *McDonnell Douglas v. Green*, 411 U.S. at 802; *Hoechstetter v. City of

Pittsburgh*, 248 F. Supp. 2d 407 (W.D. Pa. 2003) (holding that plaintiffs failed to establish that

City's articulated reasons for its failure to hire plaintiffs were pretextual). The *McDonnell Douglas* burden-shifting analysis is applicable at the summary judgment stage. *Id.*; *Bartholomew v. St. Luke's Hosp.*, No. 02-2876, 2003 U.S. Dist. Lexis 7695, at *18-20 (E.D. Pa. Apr. 30, 2003) (granting summary judgment to employer on age discrimination, sex discrimination, retaliation and hostile work environment claims because plaintiff failed to show that employer's articulated reasons were pretext).

Penn has shown that it had a legitimate and nondiscriminatory reason for its failure to hire Parker in 2001. The reason Penn did not hire Parker is because he had not applied for any specific position, and it did not conduct any search of the resumes of non-applicants for positions being filled. (Exhibit 3 ¶¶ 6, 8, 11, 14). There are so many resumes in Penn's database that a "key word" search for several of the words found on Parker's resume returned thousands of qualified resumes of which Parker's resume was one. (Id. ¶ 12). Moreover, Donna Showell-Brown, the individual responsible for the resume collection database, stated "given the large volume of applicants applying for a specific job, recruiters rarely consider applicants who do not apply for a specific job." (Id. ¶ 8). No such applicants were considered during the relevant time frame. (Id. ¶ 14). As discussed in greater detail below, Parker has not, and cannot, point to any evidence that contradicts in any way Penn's legitimate nondiscriminatory reason. Consequently, Parker cannot demonstrate that there is a genuine issue of material fact in dispute and Penn's Motion for Summary Judgment should be granted.

E.   **There Is No Evidence That Would Support The Conclusion That Penn's Legitimate And Nondiscriminatory Reasons For Its Failure To Hire Parker Are Pretextual**

The Court's November 2003 Order invited Plaintiff to show that Penn's legitimate and nondiscriminatory reasons for its failure to hire Parker are pretextual by allowing him to take

additional discovery regarding the fate of his resume when he submitted it to Penn's web site in

July 2001. The record as it stood in November 2003 consisted of the unrebutted affidavit of

Donna Showell-Brown. None of the discovery Parker has conducted since the November Order

adds to this record or in any way rebuts her testimony: Penn did not consider Parker for

employment because he did not apply for a particular position, and because it had no need to

consult its database beyond the pool of applicants for each particular position. None of the

information sought by Parker in his outstanding motion to compel bears on this fact.

No reasonable trier of fact could find that there is a genuine issue with respect to the

Penn's proffered reason for its failure to hire. *Hoechstetter v. City of Pittsburgh*, 248 F. Supp. 2d

407 (W.D. Pa. 2003). Consequently, Penn is entitled to judgment as a matter of law.

**F.    Parker's Disparate Impact Claim Fails Because Penn Never Considered Parker For Employment**

Parker lacks standing to bring a disparate impact claim. This Court has held that in order

to have standing to make a disparate impact claim, Plaintiff must show that he was harmed by

Penn's hiring policies. November 2003 Order at 7-8.[13] The Court concluded that "if plaintiff

cannot prove that defendant considered him for employment, he does not have standing." *Id.* at

8. Since the November 2003 Order, Parker has established no evidence that would rebut the

affidavit of Donna Showell-Brown to show that Penn ever considered his July 2001 resume

submission. Consequently, Parker does not have standing and summary judgment should be

granted on this claim.

Even if plaintiff did have standing, which he does not, his claim for disparate impact

would still fail. In order to bring a disparate impact claim, a plaintiff must "identify a particular

---

[13] The Court stated that it would "defer resolution of the disparate impact claim and consider it in conjunction with the intentional discrimination claim." November Order at 8.

employment practice that causes a disparate impact on the basis" of membership in a protected class. 42 U.S.C. § 2000e-2(k). Parker has not, and cannot, identify a particular employment practice that had an adverse effect on whites or males. Parker has not, and cannot, show any statistical disparate impact based on his race or sex. Parker, therefore, cannot state a *prima facie* case of disparate impact.

To the extent that Parker attempts to allege a systemic disparate treatment case, it is axiomatic that the plaintiff must show that the employer relied on discriminatory criteria, implicitly or explicitly, to make its adverse employment decision. *See, e.g., Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) (concerning formal policies with discriminatory effect); *Teamsters v. United States*, 431 U.S. 324 (1977) (concerning informal "patterns or practices"). Parker must prove that Penn failed to consider his resume and hire him because he is Caucasian male. Here the facts are clear and simple:

Parker's resume does not state his race or sex. (Exhibit 2). In fact, only by his name, could a recruiter – had he or she considered his resume – have surmised his gender. Even if Penn had considered his resume, a recruiter could not have known that Parker was Caucasian. (Exhibit 3 ¶ 16). In any event, there was no database search, and no rejection. Since no one at Penn reviewed Parker's resume, his race and/or sex played no role in his failure to obtain a position. Since the November 2003 Order, Parker adduced no evidence through discovery that in any way creates a triable issue of fact that would show that his gender or race was a factor in Penn's failure to offer him a job in July 2001.

Penn is entitled to summary judgment as a matter of law because it the undisputed facts of record demonstrate that Parker's race and/or sex was not a factor in the present case.

**G.    Parker's Retaliation Claim Also Fails Because Penn Has Articulated Legitimate, Nondiscriminatory, And Nonretaliatory Reasons For Its Failure To Hire Parker**

Parker's retaliation claim fails because: (1) Penn never took any adverse employment action against him, and (2) because it never took any fact from his resume into account. To establish a prima facie case of retaliation, Parker must show that: Penn made an adverse employment decision against him because of some protected activity. *Bartholomew v. St. Luke's Hosp.*, 2003 U.S. Dist. Lexis 7695, at *16 (citing *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

As Penn argued in its earlier Motion For Summary Judgment, Parker fails to satisfy the elements of the *prima facie* case of retaliation. In denying Penn's earlier motion for summary judgment, this Court held that Parker met the prima facie test for retaliation. November Order at 5-6. Penn maintains that Parker fails to meet the *prima facie* test, because, as discussed in Section IV.C., *supra*, Penn did not take an adverse employment action against Parker because Parker never applied for a position. In addition, Penn incorporates as if fully set forth herein its prior Motion For Summary Judgment.

Even if Parker meets the *prima facie* test, this Court has noted that Penn "has stated a legitimate, non-retaliatory reason for failing to hire plaintiff: that his application was never reviewed." November Order at 8. Parker must therefore prove that Penn's reason is pretextual. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003). For the reasons stated in section IV. D, above, there are no disputed issues of fact with respect to pretext because Parker has produced no evidence to rebut the affidavit of Donna Showell-Brown.

V.    **CONCLUSION**

For all of the foregoing reasons, Penn respectfully requests that the Court grants its

Motion for Summary Judgment and enters judgment in Penn's favor and against Plaintiff,

Gordon Roy Parker.


Date:    May 14, 2004        _____
                             John M. Myers (Pa. Id. No. 16642)
                             Jonathan H. Pyle (Pa/Id. No. 89887)

                             MONTGOMERY, McCRACKEN,
                                WALKER & RHOADS, LLP
                             123 South Broad Street
                             Philadelphia, PA  19109
                             Telephone No.:      (215) 772-1500
                             Facsimile No.:      (215) 772-7620

                             Attorneys for Defendant
                             UNIVERSITY OF PENNSYLVANIA