# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br>v.<br><br>**UNIVERSITY OF PENNSYLVANIA**, a<br>Pennsylvania nonprofit corporation,<br>Defendant. | **CASE NO.: 02-cv-567** |

## PLAINTIFF'S THIRD SET OF INTERROGATORIES

Defendant University of Pennsylvania ("Penn") is required to serve the Plaintiff with answers to these Interrogatories in accordance with the Federal Rules of Civil Procedure. These Interrogatories shall be deemed continuing in nature, so as to require further and additional answers up to the time of trial, if additional subsequent information is obtained by Penn, its officers, its employees, or its agents.

These interrogatories and requests to produce are continuing in nature, and to the extent that any answers hereto may be enlarged, expanded upon, modified, or corrected as a result of any change in circumstances subsequent to the filing of Penn's answers hereto, Penn is requested to promptly supply with amended or supplemental answers as required by Rule 26 of the Federal Rules of Civil Procedure.

For the purposes of framing Penn's responses to these interrogatories, wherever possible, the singular should be read to include the plural and vice versa.

With respect to each of the following interrogatories, in addition to supplying the information requested, please identify any and all documents that support, refer to, or evidence the subject matter of each interrogatory in Penn's answers thereto. If any or all of the documents identified herein are no longer in Penn's possession, custody, or control because of destruction,

loss, or any other reason, then Penn is requested to identify each such document fully, including the nature of the document, its date, the identity of the person who prepared the document, and the identity of the person or entity for whom it was prepared, and to the extent possible, Penn is requested to summarize the contents of the document and state the manner and date of the disposition thereof.

If any of the interrogatories are not answered on the basis of privilege or otherwise, or if any of the documents or things requested are not produced on the basis of privilege or otherwise, consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure, please include in Penn's response to each such interrogatory or document request a written statement evidencing:

1. The nature and date of the communication or document,

2. The identity of the persons present at such communication or the identity of the author(s) and recipient(s) of the document, and

3. The nature of the privilege asserted and a brief description of the communication or document sufficient to allow the Court to rule on a motion to compel.

### Plaintiff's Interrogatories

**Interrogatory #1.** List all media (including magazines, internet other than the UPenn human-resources website, newspapers, radio, etc.) in which help-wanted advertising (general or for specific positions) was placed by Penn (or anyone acting on its behalf) during the calendar year of 2001.

**Interrogatory #2.** List all staff positions within Penn which were open at any time during the calendar year 2001, including but not limited to the UPenn Health System and UPenn Medical Center, for which Dianne Hannah-Wilson was involved in the application or hiring

process in any way, including but not limited to forwarding or redirecting resumes submitted to her by facsimile.

**Interrogatory #3.** Explain, with specificity, the circumstances under which an open staff position at Penn is advertised in newspapers or on internet websites (such as monster.com).

**Interrogatory #4.** Explain, with specificity, what happens to a resume which is faxed, mailed or otherwise submitted to Penn or any Penn hiring officer (or agent of a Penn hiring officer), in response to a help-wanted or employment advertisement placed in any newspaper or internet media. The explanation should specify whether or not the resume is ignored, or if not ignored, what is done with the resume.

**Interrogatory #5.** Explain, with specificity, everything that happened to the copy of Plaintiff's resume after it was faxed to the office of Dianne Hannah-Wilson, Director of Recruitment for the UPenn Health System, on or about July 17, 2001.

**Interrogatory #6.** List all individuals who faxed their resume to the Director of Recruitment's office of the UPenn Health System during the calendar year of 2001 and state, with specificity, whether or not any of these individuals were later called upon for interviews, hired for any positions, or told to apply via the Penn Human Resources Department or its website, as a result of that submission.

**Interrogatory #7.** For all administrative assistant, secretarial, receptionist, and clerical positions within the UPenn Health System which were "open" (i.e., for which a permanent employee was being sought) at any time between July 17, 2001 and January 17, 2002, list the job title, hiring officer, starting salary, and the names of all candidate(s) who were interviewed for each position, as well as the names of all decisionmaker(s) for the relevant open position(s).

**Interrogatory #8.** Identify, by job title and position number, all faculty and staff position(s) at Penn filled since the beginning of 1999 and through the end of 2003 for which the recruitment process consisted of a "special effort search."

**Interrogatory #9.** List all job categories (as detailed in Penn's 2002 Affirmative Action Plan) for which special effort searches are currently conducted whenever positions in that category become open, or for which they have been conducted at any time since January 1, 2001 (as detailed in Penn's previous Affirmative Action Plan).

**Interrogatory #10.** State, with specificity, all steps taken to assist current Penn staff in finding new positions at Penn in the event their positions are eliminated or they are otherwise laid off.

**Interrogatory #11.** State, with specificity, why Penn's decision (as reflected by the conduct of its relevant officers) not to alter its affirmative action policy, once confronted with Plaintiff's position that it is both a violation of Title VII and the Equal Protection Clause of the

United States Constitution, should not be construed as a conscious decision by Penn to endorse this policy despite any objections to it raised by Plaintiff.

**Interrogatory #12.**    State, with specificity, the percentage of women and each minority who are currently undergraduate students at Penn.

**Interrogatory #13.**    State, with specificity, all steps that were taken to assist one Mr. Le (the Plaintiff in <u>Le v. University of Pennsylvania</u>), to help him find work while his grievances and eventual lawsuits against Penn were being adjudicated.

**Interrogatory #14.**    State, with specificity, what constitutes the "serious and imaginative" outreach steps in staff recruitment (per Penn's own statements of policy) that are used to comply with Penn's Affirmative Action Policy and to promote general diversity among faculty staff at Penn.

This the 12th Day of March, 2004.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br>v.<br><br>**UNIVERSITY OF PENNSYLVANIA**, a Pennsylvania nonprofit corporation, Defendant. | **CASE NO.: 02-cv-567** |

## PLAINTIFF'S FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff Gordon Roy Parker, pro se, hereby requests that Defendant University of Pennsylvania ("Penn" or "UPenn") serve a written answer ***under oath*** which identifies all documents produced or made available, and produce documents for inspection and copying by Plaintiff and/or his agent within thirty (30) calendar days of the date hereof.

## INSTRUCTIONS

1.      In responding to the following requests for production of documents, Penn shall furnish all documents of whatsoever kind which are responsive to any of the requests below, including without limitation each and every letter, note, memorandum, diary, summary, posting, handbook, manual as well as all electronic, mechanical, electrical and oral records and all graphic representations of any kind in the possession, custody or control of Penn, or in the possession, custody or control of Penn's attorneys, employees or other agents.

2.      In Penn's answer to the following document request, Penn shall state whether Penn acknowledges having any such documents or claims to have no such documents in its possession, custody or control.  With respect to those documents or categories of documents which Penn acknowledges having, Penn shall number each document and further identify each document by



author, title, addressee, date and general subject matter, and thereafter advise whether Penn agrees to produce all such documents, or objects to the production of any documents, in which latter case Penn shall set forth in detail the nature of each and every objection.

3.    If Penn claims that any requested documents are privileged and not subject to discovery, Penn shall nevertheless timely produce each and every document as to which no privilege is claimed. At the same time, Penn shall set forth in detail the nature of the privilege asserted with respect to each document. If attorney/client privilege is being claimed by Penn, the answer shall identify both the attorney and the client, and attach a statement by the client, or a verification by the attorney that the client has been consulted with regard to any such privilege asserted for the specifically identified document, and that the privilege is in fact being asserted by the client.

4.    Penn shall promptly supplement this production if additional responsive documents are located subsequent to the time of production. However, nothing contained herein shall relieve Penn of the duty to perform a diligent search for all requested documents and to produce them initially within the specified time. Nor shall this instruction constitute a waiver of the right to seek the preclusion at trial of any documents not produced in a timely manner, or to seek any other appropriate sanction in the event that any document described herein is not produced in accordance with this request.

5.    Any legitimate objection by Penn to the form of any specific instruction shall not relieve them of the duty to comply with those instructions to which they do not object.

## DOCUMENTS TO BE PRODUCED

1.    Produce all documents relevant to the procedure for handling and responding to faxed, mailed, or electronically submitted resumes to hiring managers at Penn during the Calendar year of 2001.

2.    Produce all documents relevant to or referenced by the accompanying Plaintiff's Third Set of Interrogatories and Plaintiff's Second Set of Requests For Admission.

3.    Produce all documents relevant to determining the criteria for a special effort search, and what steps, if any, were taken because of the special-effort search designation for all recruitment at Penn since January 1, 2001 through the present.

This the 12th day of March, 2004.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br><br>v.<br><br><br>**UNIVERSITY OF PENNSYLVANIA**, a<br>Pennsylvania nonprofit corporation,<br>Defendant. | **CASE NO.: 02-cv-567** |

## <u>CERTIFICATE OF SERVICE</u>

I, Gordon Roy Parker, Plaintiff Pro Se in the above-styled action, have served a true and correct copy of the foregoing **Plaintiff's Third Set Of Interrogatories, Plaintiff's Second Set of Requests For Admission,** and **Plaintiff's Fifth Request For Production of Documents** on Defendant through its undersigned counsel, by **hand delivery**:

> John M. Myers, Esq.
> Crystal D. Deazle, Esq.
> Montgomery, McCracken, Walker & Rhoads
> 123 South Broad Street, 28th Floor
> Philadelphia, PA 19109

This the 12th Day of March, 2004.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br><br>v.<br><br><br>**UNIVERSITY OF PENNSYLVANIA**, a<br>Pennsylvania nonprofit corporation,<br>Defendant. | **CASE NO.: 02-cv-567** |

## PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION

Defendant University of Pennsylvania ("Penn") is required to serve Plaintiff with a with a

written response to each request for admission within thirty (30) days of the date of receipt hereof

pursuant to the Federal Rules of Civil Procedure.  If Penn is unable to admit any request as stated in

it's entirety, then Penn shall admit those portions that can be admitted, and explain with specificity

the reasons and basis why any remaining portions are not admitted.  These admissions are for the

purpose of this action only and subject to all pertinent objections to admissibility which may be

interposed at trial.  If Penn fails to respond within thirty (30) days, then such failure shall be deemed

as an admission under the applicable Rules.

1.    ADMIT that on or about July 17, 2001, Plaintiff faxed his resume to (215) 662-7835.

2.    ADMIT that, on or about July 17, 2001 the fax number (215) 662-7835 was located in

the office(s) of the Director of Recruitment for the University of Pennsylvania Health System.

3.    ADMIT that, during the calendar year of 2001, at least one hiring officer at Penn

placed, or caused to be placed, at least one help-wanted advertisement in the classified sections

of local newspapers (such as the *Philadelphia Inquirer*).

RECEIVED

4.     ADMIT that, during the calendar year of 2001, at least one hiring officer at Penn placed, or caused to be placed, at least one help-wanted advertisement on the website located at http://www.monster.com.

5.     ADMIT that when a resume is faxed, mailed, or electronically submitted to Penn in response to an advertisement in a newspaper or website (such as monster.com), that the resume is reviewed by its recipient, and that a decision by the hiring officer (or the hiring officer's subordinate) is made regarding whether or not to contact the individual submitting the resume for the purpose of arranging an employment interview or otherwise assisting in the employment application process.

6.     ADMIT that Penn's 2002 Affirmative Action **Plan** states the following:[1]

> For most job groups at Penn, an apparent mathematical under-utilization alerts Penn to potential problem areas for which it must pay special attention to determine whether or not in each selection decision made at the school and center level is consistent with Penn's non-discrimination policy.
>
> *In other job groups, however, women and minorities are mathematically over-represented but yet the mathematical calculation of labor market availability and the required comparison between that availability and the contractor's workforce seem to suggest that goals must be set in this case as well.* Penn recognizes that the mathematical existence of under-utilization may suggest a "manifest imbalance" and that it must set placement goals in even these cases.  In all good faith, Penn instead may concentrate its review on those job groups and management levels within the organization where there is a dearth or few minorities and women.
>
> Additionally, *in some job groups where no apparent mathematical under-utilization of women and minorities exists, yet in reality there is few to no representation of women and minorities in those job groups,* Penn **may again** concentrate its review in these areas.

7.     ADMIT that the statement(s) quoted in paragraph 6) above reflect a policy that is not mandated by OFCCP regulations.

---

[1] See Exhibit F to Plaintiff's Motion For Partial Summary Judgment, Bates #00952, ¶¶3-5.

8.    ADMIT that once Plaintiff initially contacted the Office of Affirmative Action ("OAA") by facsimile on or about July 27, 2001, it (the OAA) became aware of his concerns regarding Penn's Affirmative Action policies.

9.    ADMIT that Penn had the capability to alter its Affirmative Action or "diversity" policies in response to Plaintiff's grievance/concerns as raised in his fax to the Office of Affirmative action on July 27, 2001.

10.    ADMIT that after Plaintiff contacted the Office of Affirmative Action, that Penn never contacted him by mail, telephone or otherwise to address his concerns or inform him that they were being addressed.

11.    ADMIT that sometime between the years of 1994 and 1998, that the University of Pennsylvania (or its health system, hospital, medical school, or other affiliated medical practices) agreed to pay a fine of an amount greater than $10 million by the United States Government to resolve a claim of Medicare or Medicaid fraud.

This the 12th day of March, 2004.

*Gordon Roy Parker*

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366

3

# EXHIBIT 12

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br><br>v.<br><br><br>**UNIVERSITY OF PENNSYLVANIA**, a<br>Pennsylvania nonprofit corporation,<br>Defendant. | **CASE NO.: 02-cv-567** |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY
## PURSUANT TO FEDERAL RULES 26 AND 37

**Plaintiff**, in the above-styled action, hereby moves this court to compel Plaintiff's

outstanding discovery requests, which include his Fifth Request For Production Of Documents,

his Second Set Of Requests For Admission, and his Third Set of Interrogatories. In support

thereof, he sets forth and avers the following:

### CERTIFICATION PURSUANT TO LOCAL RULE 26.1(f)

Pursuant to Local Rule 26.1, Plaintiff certifies, under penalty of perjury, that he sought

concurrence with defense counsel, Mr. John M. Myers, by telephone on April 14, 2004. No

concurrence was achieved, which led to the filing of this Motion.

### MEMORANDUM OF LAW

Discovery which is *relevant* to the instant action should be compelled. Admissibility

is an issue to be resolved later in this litigation. (Citations omitted).

### DISCOVERY REQUESTS

Following are Plaintiff's reasons for seeking each discovery request in controversy. A

copy of the entire set of responses by Penn is attached hereto as Exhibit A and incorporated by

reference as if fully set forth verbatim herein.

A.    <u>Response To Penn's General Objections.</u>  Discovery related to Penn's affirmative-action plan are relevant to proving pretext, which is also relevant to Plaintiff's retaliation claim. Discovery related to Penn's hiring process is relevant to proving pretext regarding what happened to Plaintiff's resume submission.  Discovery relating to government fraud is relevant to character, which is relevant to the testimony regarding the above issues.

B.    <u>Plaintiff's General Objections Relating To November 3, 2003 Order Regarding Discovery</u>.

This Court's order of November 3, 2003 limiting discovery was based on the dismissal of Plaintiff's gender discrimination claims (the Court said the discovery was moot since the claim had been dismissed).  Since that claim was reinstated, any related discovery should also be permitted.

<u>Plaintiff's Third Set Of Interrogatories</u>

1.    This interrogatory is relevant to the issue of proving that Penn's stated reason for not hiring Plaintiff was that he did not apply for a specific job, and Penn's claim that the only way to apply for work at Penn is through its HR database.  To the extent this Court finds it burdensome, it should compel limited discovery.

2.    This interrogatory is relevant to the issue of Plaintiff's faxed resume to the UPenn medical center on July 17, 2001 and how resumes faxed to the recruiting director are processed.  To the extent this Court finds it burdensome, it should compel limited discovery.

3.    This interrogatory is relevant to the issue of Penn's hiring and application process, and to the issue of pretext.  Penn's answer is also incomplete in that it does not state that specific departments did not place these advertisements.  Further, Plaintiff applied in the Spring of 2002 through Monster.com for a legal secretarial position in Penn's Office of General Counsel.    Answer should be compelled.

4.    This interrogatory was answered and need not be compelled further.

5.    This interrogatory was answered, although the answer conflicts with Plaintiff's records. It need not be compelled further.

6-7. These interrogatories are relevant to Penn's defense that Plaintiff had not applied for a job at Penn, pretext, and Penn's hiring process. To the extent this Court finds it burdensome, it should compel limited discovery.

8-9. These interrogatories are relevant to Plaintiff's affirmative-action claims. The "confidential information" that is privileged can be redacted or produced in camera.

10.    This interrogatory is relevant to the issue of Penn's hiring and application process, and to the issue of pretext. It is further relevant to the issue of how the transfer and internal application process at Penn can cement any bias which favors entry into employment at Penn (i.e., an advantage favoring incumbency will also favor anyone benefiting from bias that causes them to become incumbent in the first place). Its answer should be compelled.

11.    This interrogatory is relevant to Plaintiff's affirmative-action claims, his retaliation claim, and the issue of pretext. Answer should be compelled.

12.    This interrogatory is relevant to Plaintiff's affirmative-action claims (comparing its application in education and employment), and to his gender claims (performance evaluations of Penn employees often take into account how one interacts with the students). Answer should be compelled.

13.    This interrogatory is relevant to how Penn reacts when a discrimination claim is initiated. Answer should be compelled.

14.    This interrogatory is relevant to Plaintiff's affirmative-action claims. To the extent this Court finds it burdensome, it should compel limited discovery.

### Plaintiff's Fifth Request For Production Of Documents

1.    This document request is relevant to Penn's defense that Plaintiff had not applied for a job at Penn, pretext, and Penn's hiring process.

2.    To the extent that the related Interrogatories and Requests For Admission are compelled, this document request should also be compelled.

3.    This document request is relevant to Plaintiff's affirmative-action claims.

### Plaintiff's Second Set Of Requests For Admission

1.    This request was answered, although it does not agree with Plaintiff's records.

2.    This request was admitted.

3-4.    Answer to these requests should be compelled because it is relevant to Penn's hiring process and the issue of pretext.

5.    This request was answered.

6.    Answer to this request should be compelled because it is relevant to Plaintiff's affirmative-action claims, Penn's hiring process and the issue of pretext.

7-10.    Answer to these requests should be compelled because it is relevant to Plaintiff's affirmative-action and retaliation claims, Penn's hiring process and the issue of pretext.

11.    Answer to this request should be compelled because it is relevant to Penn's character and the character of its officers (most of whom hire secretaries), and Plaintiff's retaliation claim, as well as the issue of pretext.

**CONCLUSION/RELIEF SOUGHT**

WHEREFORE, for the reasons averred herein, the instant motion should be **granted**.

This the 15th day of April, 2004.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff <br><br> v. <br><br> **UNIVERSITY OF PENNSYLVANIA,** <br> a Pennsylvania nonprofit corporation, <br> Defendant. | **CASE NO.: 02-cv-567** |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2004, and upon consideration of

Plaintiff's Motion To Compel Discovery, and any responses thereto, the motion is **granted.**

Defendant shall comply with all outstanding discovery requests within fourteen (14) days of

this Order.

SO ORDERED.

_____
J.

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br><br>v.<br><br><br>**UNIVERSITY OF PENNSYLVANIA**, a<br>Pennsylvania nonprofit corporation,<br>Defendant. | **CASE NO.: 02-cv-567** |

### CERTIFICATE OF SERVICE

COMES NOW PLAINTIFF in the above-styled action to set forth that the foregoing

**Plaintiff's Motion To Compel Discovery** has been served on Defendant's attorney via **regular**

**mail** at the following address (with additional e-mail or fax service for the sake of expedience):

> John M. Myers, Esq.
> Montgomery, McCracken, Walker & Rhodes
> 123 South Broad Street, 28th Floor
> Philadelphia, PA 19109

This the 15th day of April, 2004.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
ATTORNEYS AT LAW

JOHN M. MYERS
ADMITTED IN PENNSYLVANIA

DIRECT DIAL
215-772-7535

jmyers@mmwr.com

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

300 DELAWARE AVENUE, SUITE 750
WILMINGTON, DE 19801
302-504-7800
FAX 302-504-7820

1235 WESTLAKES DRIVE, SUITE 200
BERWYN, PA 19312
610-889-2210
FAX 610-889-2220

April 12, 2004

Gordon Roy Parker
4247 Locust St. #806
Philadelphia, PA 19104

Re:    Parker v. University of Pennsylvania, No. 02-cv-567

Dear Mr. Parker:

In response to Plaintiff's Fifth Request For Production of Documents, I am enclosing a screenshot of a search query in the Health System's database for applicants with the last name "Parker" who applied for jobs between June 1, 2001 and August 31, 2001. A search for all applicants during this time period produced 1,602 applicants. Of these, only one applicant, a female, had the last name "Parker." Your name was not among the search results.

Sincerely,

John M. Myers



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                  :
                                    :
          Plaintiff                 :        CASE NO.: 02-cv-567
                                    :
     v.                             :
                                    :
UNIVERSITY OF PENNSYLVANIA, a       :
Pennsylvania nonprofit corporation, :
                                    :
          Defendant.                :

### PENN'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
### THIRD SET OF INTERROGATORIES

Defendant University of Pennsylvania ("Penn"), by and through its undersigned counsel,

pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby objects and responds to

Plaintiff's Third Set of Interrogatories dated March 12, 2004.

### GENERAL OBJECTIONS

Penn objects to Plaintiff's Third Set of Interrogatories to the extent it seeks information

outside the scope of discovery. The Court has allowed Plaintiff only to "seek further discovery

related to the fate of his resume when it was submitted to Penn in July, 2001." Explanation and

Order, Nov. 3, 2003, at 7. For example, "information related to Penn employees and affirmative

action" and "information relating to alleged gender disparities at Penn" is irrelevant and not

discoverable. *Id.* at 7 n.5.

### SPECIFIC OBJECTIONS AND RESPONSES

1.      List all media (including magazines, internet other than the UPenn Human-

resources website, newspapers, radio, etc.) in which help-wanted advertising (general or for

specific positions) was placed by Penn (or anyone acting on its behalf) during the calendar year of 2001.

**RESPONSE:**

Objection. This interrogatory is overly burdensome and is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, the Division of Human Resources at the University of Pennsylvania did not advertise clerical positions in 2001. The Health System placed general awareness ads in 2001, but rarely advertised clerical positions, if at all. Job openings were typically advertised by way of posted notices inside Health System buildings. The University and the Health System advertised on the radio, on the web, and in newspapers an April 2001 job fair at which clerical positions were filled.

2.      List all staff positions within Penn which were open at any time during the calendar year 2001, including but not limited to the UPenn Health System and UPenn Medical Center, for which Dianne Hannah-Wilson was involved in the application or hiring process in any way, including but not limited to forwarding or redirecting resumes submitted to her by facsimile.

**RESPONSE:**

Objection. This interrogatory is overly burdensome and is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, Dianne Hannah-Wilson was involved in all aspects of hiring at the Health Center in 2001, including handling applications and hiring for clerical positions. Two employees working under the direction of Ms. Hannah-Wilson handled applications for clerical positions.

-2-

3.    Explain, with specificity, the circumstances under which an open staff position at Penn is advertised in newspapers or on internet websites (such as monster.com).

**RESPONSE:**

Objection. This interrogatory is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, the Division of Human Resources at the University of Pennsylvania did not post open clerical positions on Internet web sites other than its own. The University of Pennsylvania Health System occasionally posted job openings on monster.com and other internet web sites, but clerical positions would not likely have been posted on the internet because of the volume of qualified applicants for clerical positions was so large that advertising on the internet would not have been necessary.

4.    Explain, with specificity, what happens to a resume which is faxed, mailed or otherwise submitted to Penn or any Penn hiring officer (or agent of a Penn hiring officer), in response to a help-wanted or employment advertisement placed in any newspaper or internet media. The explanation should specify whether or not the resume is ignored, or if not ignored, what is done with the resume.

**RESPONSE:**

The practice of the Division of Human Resources at the University of Pennsylvania is to disregard resumes submitted by means other than the Human Resources web site. A human resources staff member may, but need not, contact the attempted applicant to instruct him or her to submit an application through the web site. The practice of the University of Pennsylvania Health System is to disregard resumes submitted by means other than the Health System's web

site. Staff members do not contact attempted applicants to instruct them to submit an application through the Health System's web site.

    5.    Explain, with specificity, everything that happened to the copy of Plaintiff's resume after it was faxed to the office of Dianne Hannah-Wilson, Directory of Recruitment for the UPenn Health System, on or about July 17, 2001.

    **RESPONSE:**

    The Health System has no record of having received a resume from plaintiff on or about July 17, 2001.

    6.    List all individuals who faxed their resume to the Director of Recruitment's office of the UPenn Health System during the calendar year of 2001 and state, with specificity, whether or not any of these individuals were later called upon for interviews, hired for any positions, or told to apply via the Penn Human Resources Department or its website, as a result of that submission.

    **RESPONSE:**

    Objection. This interrogatory is overly burdensome and is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. In addition, this request seeks confidential information concerning Penn employees and job applicants. Notwithstanding these objections, Penn incorporates its response to Interrogatory 5.

    7.    For all administrative assistant, secretarial, receptionist, and clerical positions within the UPenn Health System which were "open" (i.e., for which a permanent employee was being sought) at any time between July 17, 2001 and January 17, 2002, list the job title, hiring officer, starting salary, and the names of all candidate(s) who were interviewed for each position, as well as the names of all decisionmaker(s) for the relevant open position(s).

-4-

**RESPONSE:**

Objection. This interrogatory is overly burdensome and is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. In addition, this request seeks confidential information concerning Penn employees and job applicants.

8.    Identify, by job title and position number, all faculty and staff position(s) at Penn filled since the beginning of 1999 and through the end of 2003 for which the recruitment process consisted of a "special effort search."

**RESPONSE:**

Objection. This interrogatory is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. In addition, this request seeks confidential information concerning Penn employees. Notwithstanding these objections, no "special effort searches" were conducted at the University or the Health System between the beginning of 1999 and the end of 2003.

9.    List all job categories (as detailed in Penn's 2002 Affirmative Action Plan) for which special effort searches are currently conducted whenever positions in that category become open, or for which they have been conducted at any time since January 1, 2001 (as detailed in Penn's previous Affirmative Action Plan).

**RESPONSE:**

Objection. This interrogatory is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding these objections, no "special effort searches" have been conducted at the University or the Health System since January 1, 2001.

10. State, with specificity, all steps taken to assist current Penn staff in finding new positions at Penn in the event their positions are eliminated or they are otherwise laid off.

**RESPONSE:**

Objection. This interrogatory is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant.

11. State, with specificity, why Penn's decision (as reflected by the conduct of its relevant officers) not to alter its affirmative action policy, once confronted with Plaintiff's position that it is both a violation of Title VII and the Equal Protection Clause of the United States Constitution, should not be construed as a conscious decision by Penn to endorse this policy despite any objections to it raised by Plaintiff.

**RESPONSE:**

Objection. This interrogatory is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant.

12. State, with specificity, the percentage of women and each minority who are currently undergraduate students at Penn.

**RESPONSE:**

Objection. This interrogatory is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant.

13. State, with specificity, all steps that were taken to assist one Mr. Le (the Plaintiff in <u>Le v. University of Pennsylvania</u>), to help him find work while his grievances and eventual lawsuits against Penn were being adjudicated.

**RESPONSE:**

Objection. This interrogatory is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant.

14.    State, with specificity, what constitutes the "serious and imaginative" outreach steps in staff recruitment (per Penn's own statements of policy) that are used to comply with Penn's Affirmative Action Policy and to promote general diversity among faculty staff [sic] at Penn.

**RESPONSE:**

Objection. This interrogatory is overly burdensome and is neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant.

Respectfully submitted,

Date:  April 12, 2004

John M. Myers (Pa. Id. No. 16642)
Jonathan H. Pyle (Pa. Id. No. 89887)
Montgomery, McCracken, Walker &
    Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

Attorneys for Defendant
University of Pennsylvania

## CERTIFICATE OF SERVICE

I, Jonathan H. Pyle, do hereby certify that on the 12th day of April, 2004, I caused a true and correct copy of the foregoing Penn's Objections and Responses to Plaintiff's Third Set of Interrogatories to be served via U.S. First Class Mail, postage prepaid, upon the following individual at the address indicated:

> Gordon Roy Parker
> 4247 Locust Street, #806
> Philadelphia, PA  19104
>
> **_Pro Se Plaintiff_**


Jonathan H. Pyle

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,           :
                                :
        Plaintiff          :       CASE NO.: 02-cv-567
                                :
     v.                      :
                                :
UNIVERSITY OF PENNSYLVANIA, a  :
Pennsylvania nonprofit corporation,  :
                                :
        Defendant.      :

## PENN'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant University of Pennsylvania ("Penn"), by and through its undersigned counsel,

pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby objects and responds to

Plaintiff's Fifth Request for Production of Documents dated March 12, 2004.

### GENERAL OBJECTIONS

1.     Penn objects to Plaintiff's Requests to the extent that they seek information

protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or

by any other privilege or immunity from discovery under statutory, constitutional or common

law.  The inadvertent production of any document or documents that contain information that is

privileged, was prepared in anticipation of litigation or for trial, or that is otherwise immune

from discovery, shall not constitute a waiver of any privilege or any ground for objection to

discovery with respect to such document, or the subject matter thereof, or of Penn's right to

object to the use of any such document or information during any subsequent proceeding,

hearing or trial.

2.     Penn specifically reserves all objections as to the competency, relevancy, materiality and admissibility of their responsive documents or the subject matter thereof, including but not limited to their right to object on any ground to the use or introduction of any responsive document, or the subject matter thereof, at trial in this action or in any other proceeding. Accordingly, Penn's production of documents responsive to Plaintiff's Requests should not be construed as an admission or stipulation that the produced material is competent, relevant, admissible or material.

3.     Any and all documents produced by Penn in response to Plaintiff's Requests are produced without waiver of, and subject to, these General Objections, Penn's Objections to Plaintiff's Instructions, *and* any applicable Specific Objections set forth below.

4.     Penn objects to Plaintiff's Requests to the extent that Plaintiff's Requests purport to impose obligations and duties upon Penn that are beyond the scope of discovery as defined by Rule 26 of the Federal Rules of Civil Procedure.

5.     Penn objects to Plaintiff's Requests to the extent that Plaintiff's Requests seek documents that are a matter of public record or otherwise are as equally accessible to Plaintiff as they are to Penn.

6.     Penn objects to Plaintiff's Requests to the extent that Plaintiff's Requests seek documents and materials not reasonably calculated to lead to the discovery of admissible evidence.

7.     Penn objects to Plaintiff's Requests to the extent that Plaintiff's Requests seek documents and materials that can be obtained from other sources that are more convenient, less burdensome and/or less expensive than Penn.

8.    Penn objects to Plaintiff's Requests to the extent that Plaintiff's Requests purport to impose upon Penn a duty to search for and/or disclose information or documents that are not within Penn's possession, custody or control.

9.    Penn objects to Plaintiff's Requests to the extent that Plaintiff's Requests purport to impose upon Penn a duty to produce copies of documents that Penn has already provided to Plaintiff.

10.    Penn objects to Plaintiff's Requests to the extent that they are vague and/or ambiguous.

11.    These General Objections are asserted by Penn with respect to all of Plaintiff's Requests, and they are incorporated by reference into each of Penn's Specific Objections and responses set forth below as though set forth at length therein. Penn's assertion of a Specific Objection shall in no way affect, waive or limit the applicability of Penn's General Objections to all of Plaintiff's Requests.

### OBJECTIONS TO PLAINTIFF'S
### INSTRUCTIONS FOR PLAINTIFF'S REQUESTS

1.    Penn objects to Instruction 1 of Plaintiff's Requests to the extent that it purports to impose upon Penn a duty to search for and/or disclose information or documents that are not within Penn's possession, custody or control.

2.    Penn objects to Instruction 2 of Plaintiff's Requests to the extent that it purports to impose upon Penn a duty to search for and/or disclose information or documents that are outside the scope of Federal Rule of Civil Procedure 26(b)(1). The Court has stated that "Plaintiff may seek further discovery related to the fate of his resume when it was submitted to Penn in July, 2001." Explanation and Order, Nov. 3, 2003, at 7. Under the Rules and the Order of this Court, Penn need not produce anything else.

3.    Penn objects to Instruction 3 of Plaintiff's Requests to the extent that it purports to impose an obligation on Penn that is beyond the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(5). Under that Rule, Penn is only obligated to make a claim of privilege or other protection expressly and "describe the nature of" the documents not produced "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

4.    Penn objects to Instruction 4 of Plaintiff's Requests to the extent that it purports to impose an obligation on Penn that is beyond the scope of discovery permitted by Federal Rule of Civil Procedure 26(e). Rule 26(e) only imposes a duty to supplement or correct a response to a request for discovery if ordered by the court or the responding party "learns that the response is in some material respect incomplete or incorrect" and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2).

## SPECIFIC OBJECTIONS AND
## RESPONSES TO PLAINTIFF'S REQUESTS

1.    Produce all documents relevant to the procedure for handling and responding to faxed, mailed, or electronically submitted resumes to hiring managers at Penn during the Calendar year of 2001.

**RESPONSE:**

After reasonable inquiry, Penn could not locate any documents responsive to this inquiry.

2.    Produce all documents relevant to or referenced by the accompanying Plaintiff's Third Set of Interrogatories and Plaintiff's Second Set of Requests For Admission.

**RESPONSE:**

Objection. This document request is vague and overbroad. Penn's objections to

Plaintiff's Third Set of Interrogatories and Plaintiff's Second Set of Requests For Admission are

incorporated as if fully set forth herein. By way of further response, a document showing a

search for Plaintiff's name in the Health System's computer database between June 1, 2001 and

August 31, 2001, which produced no results matching Plaintiff's name, has been produced.

    3.      Produce all documents relevant to determining the criteria for a special effort

search, and what steps, if any, were taken because of the special-effort search designation for all

recruitment at Penn since January 1, 2001 through the present.

**RESPONSE:**

Objection. This document request is overly burdensome and is neither relevant to any

claim or defense in this action, nor could such documents lead to evidence which is relevant. In

addition, this document request seeks confidential information about employees of the University

of Pennsylvania. Notwithstanding this objection, a full copy of the Affirmative action plan

relevant to this action has been produced.

Respectfully submitted,

Date:   April 12, 2004

John M. Myers (Pa. Id. No. 16642)
Jonathan H. Pyle (Pa. Id. No. 89887)
Montgomery, McCracken, Walker &
    Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

Attorneys for Defendant
University of Pennsylvania

## CERTIFICATE OF SERVICE

I, Jonathan H. Pyle, do hereby certify that on the 12th day of April, 2004, I caused a true and correct copy of the foregoing Penn's Objections and Responses to Plaintiff's Fifth Request for Production of Documents to be served via U.S. First Class Mail, postage prepaid, upon the following individual at the address indicated:

> Gordon Roy Parker
> 4247 Locust Street, #806
> Philadelphia, PA 19104
>
> ***Pro Se Plaintiff***

_____
Jonathan H. Pyle

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                          :
                                            :
                Plaintiff                   :           CASE NO.: 02-cv-567
                                            :
        v.                                  :
                                            :
UNIVERSITY OF PENNSYLVANIA, a               :
Pennsylvania nonprofit corporation,         :
                                            :
                Defendant.                  :

## PENN'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
### SECOND SET OF REQUESTS FOR ADMISSIONS

Defendant University of Pennsylvania ("Penn"), by and through its undersigned counsel,

pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, hereby objects and responds

to Plaintiff Gordon Roy Parker's Second Set of Request for Admissions dated March 12, 2004.

### GENERAL CONDITIONS

1.      These responses are made without in any way waiving or intending to waive, but

on the contrary intending to preserve and preserving:

        a.      All objections to competency, relevancy, materiality, privilege, and

admissibility as evidence for any purpose in any subsequent proceedings or the trial of this and

any other action;

        b.      All objections asserted in response to specific Requests;

        c.      The right to object to the use of any information which may be provided,

the subject matter thereof, in any subsequent proceedings or the trial of this or any other action

on any ground;

    d.    The right to object on any ground at any time to further requests or other discovery proceedings involving or relating to the subject matter of the Requests; and

    e.    The right to revise, correct, supplement, clarify or amend the responses and objections to the Requests at any time.

2.    All answers to vague, ambiguous, and/or confusing Requests are based upon Penn's best understanding of the Request and/or the terms used therein.

3.    To the extent that Penn admits only portions of a particular Request, the remaining portions of that Request are denied.

### GENERAL OBJECTIONS

Penn objects generally to the Requests for the reasons stated in paragraphs 1 through 10 below. Although Penn may refer to some or all of these objections in responding to a specific Request for particular emphasis, the failure to do so (or to refer to other of these objections) is not intended to be and should not be construed as a waiver any of its General Objections with regard to the Request in question.

1.    <u>Exceeds Rules</u>: Penn objects to the Requests to the extent they purport to impose an obligation that is greater than that provided for in the Federal Rules of Civil Procedure and any decisional law regarding the proper scope of discovery.

2.    <u>Overly Broad/Unduly Burdensome</u>: Penn objects to the Requests to the extent they are overly broad, unduly burdensome and/or oppressive.

3.    <u>Irrelevance</u>: Penn objects to the Requests to the extent they seek documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.    <u>Privilege and Work Product</u>: Penn objects to the Requests to the extent they seek documents that are subject to the attorney-client privilege, constitute protected work product and/or are otherwise privileged or protected from discovery.

5.    <u>Outside Defendant's Control</u>: Penn objects to the Requests to the extent they purport to require it to obtain information obtained from or with respect to persons over whom they have no control on the ground that such requests exceed the permissible scope of discovery.

6.    <u>In Plaintiff's Possession</u>: Penn objects to the Requests to the extent that such documents are already in Plaintiff's possession.

7.    <u>Confidential and/or Proprietary Commercial Information</u>: Penn objects to the Requests to the extent that Plaintiff seeks confidential and/or proprietary commercial information.

8.    <u>Vagueness/Ambiguity</u>: Penn objects to the Requests to the extent that they are too vague and/or ambiguous to permit a meaningful or proper response.

9.    <u>Unduly Burdensome</u>: Penn objects to the Requests to the extent that (i) the discovery sought is unreasonably cumulative or duplicating or is obtainable from some source that is more convenient, less burdensome or less expensive; (ii) the Plaintiff has had ample opportunity by discovery in this action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues.

10.    <u>Calls for Legal Conclusion</u>: Penn objects to the Requests to the extent that they seek a conclusion of law, as well as admission as to an ultimate issue in this case, and are thus not appropriate material for a request for admission. <u>See</u> Wright, Miller & Marcus, <u>Federal</u>

Practice and Procedure, Civil 2d §2255 (1994); English v. Cowell, 117 F.R.D. 132 (C.D. Ill.

1986); Ghazerian v. Ogden Allied, et al., 1991 U.S. Dist. LEXIS 2608, No. 89-8900 (E.D. Pa.,

March 4, 1991); Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan, 545

Pa. Super. 512, 686 A.2d 1 (1996), appeal denied, 548 Pa. 678, 699 A.2d 733 (1997).

Penn reserves the right to amend this response and to supplement its responses to the

Requests at a later date.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving the foregoing objections, Penn responds to the Requests

as follows:

1.    ADMIT that on or about July 17, 2001, Plaintiff faxed his resume to (215) 662-

7835.

**RESPONSE:**

Denied. Penn's response to paragraph 5 of Plaintiff's Third Set of Interrogatories is

incorporated as if fully set forth herein.

2.    ADMIT that, on or about July 17, 2001 the fax number (215) 662-7835 was

located in the office(s) of the Director of Recruitment for the University of Pennsylvania Health

System.

**RESPONSE:**

Admitted.

3.    ADMIT that, during the calendar year of 2001, at least one hiring office at Penn

placed, or caused to be placed, at least one help-wanted advertisement in the classified sections

of local newspapers (such as the *Philadelphia Inquirer)*.

**RESPONSE:**

Objection. The factual allegations contained in paragraph 3 are neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, the factual allegations contained in paragraph 3 are admitted.

4.      ADMIT that, during the calendar year of 2001, at least one hiring officer at Penn placed, or caused to be placed, at least one help-wanted advertisement on the website located at http://www.monster.com.

**RESPONSE:**

Objection. The factual allegations contained in paragraph 4 are neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, the factual allegations contained in paragraph 4 are admitted.

5.      ADMIT that when a resume is faxed, mailed, or electronically submitted to Penn in response to an advertisement in a newspaper or website (such as monster.com), that the resume is reviewed by its recipient, and that a decision by the hiring officer (or the hiring officer's subordinate) is made regarding whether or not to contact the individual submitting the resume for the purpose of arranging an employment interview or otherwise assisting in the employment application process.

**RESPONSE:**

Denied. By way of further response, see Penn's response to paragraph 4 of Plaintiff's Third Set of Interrogatories.

6.      ADMIT that Penn's 2002 Affirmative Action Plan states the following:

> For most job groups at Penn, an apparent mathematical under-
> utilization alerts Penn to potential problem areas for which it must
> pay special attention to determine whether or not in each selection
> decision made at the school and center level is consistent with
> Penn's non-discrimination policy.

*In other job groups, however, women and minorities are mathematically over-represented but yet the mathematical calculation of labor market availability and the required comparison between that availability and the contractor's workforce seem to suggest that goals must be set in this case as well.* Penn recognizes that the mathematical existence of under-utilization may suggest a "manifest imbalance" and that it must set placement goals in even these cases. In all good faith, Penn instead may concentrate its review on those job groups and management levels within the organization where there is a dearth or few minorities and women.

Additionally, *in some job groups where no apparent mathematical under-utilization of women and minorities exists, yet in reality there is few to no representation of women and minorities in those job groups,* Penn may again concentrate its review in these areas.

**RESPONSE:**

Objection. The factual allegations contained in paragraph 7 are neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, the factual allegations contained in paragraph 7 are admitted.

7.    ADMIT that the statement(s) quoted in paragraph 6) above reflect a policy that is not mandated by OFCCP regulations.

**RESPONSE:**

Objection. The factual allegations contained in paragraph 7 are neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Therefore, no responsive pleading is required.

8.    ADMIT that once Plaintiff initially contacted the Office of Affirmative Action ("OAA") by facsimile on or about July 27, 2001, it (the OAA) became aware of his concerns regarding Penn's Affirmative Action policies.

**RESPONSE:**

Objection.  The factual allegations contained in paragraph 8 are neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, it is admitted only that the OAA was aware of plaintiff's complaints regarding Penn's affirmative action policies.

9.    ADMIT that Penn had the capability to alter its Affirmative or "diversity" policies in response to Plaintiff's grievance/concerns as raised in his fax to the Office of Affirmative action on July 27, 2001.

**RESPONSE:**

Objection.  The factual allegations contained in paragraph 9 are neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, it is admitted only that, within certain legal limitations, Penn is able to revise its affirmative action policies.

10.    ADMIT that after Plaintiff contacted the Office of Affirmative Action, that Penn never contacted him by mail, telephone or otherwise to address his concerns or inform him that they were being addressed.

**RESPONSE:**

Objection.  The factual allegations contained in paragraph 10 are neither relevant to any claim or defense in this action, nor could such information lead to evidence that is relevant. Notwithstanding this objection, the factual allegations contained in paragraph 10 are admitted.

11.    ADMIT that sometime between the years of 1994 and 1998, that the University of Pennsylvania (or its health system, hospital, medical school, or other affiliated medical practices) agreed to pay a fine of an amount greater than $10 million by the United States Government to resolve a claim of Medicare or Medicaid fraud.

**RESPONSE:**

Objection.  The factual allegations contained in paragraph 10 are neither relevant to any

claim or defense in this action, nor could such information lead to evidence that is relevant.

Respectfully submitted,

Date:  April 12, 2004

*Jonathan H. Pyle*

John M. Myers (Pa. Id. No. 16642)
Jonathan H. Pyle (Pa. Id. No. 89887)
Montgomery, McCracken, Walker &
    Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

Attorneys for Defendant
University of Pennsylvania

## CERTIFICATE OF SERVICE

I, Jonathan H. Pyle, do hereby certify that on the 12th day of April, 2004, I caused a true and correct copy of the foregoing Penn's Objections and Responses to Plaintiff's Second Set of Requests For Admissions to be served via U.S. First Class Mail, postage prepaid, upon the following individual at the address indicated:

> Gordon Roy Parker
> 4247 Locust Street, #806
> Philadelphia, PA  19104
>
> *Pro Se Plaintiff*

Jonathan H. Pyle