# EXHIBIT 5

1

1          IN THE COURT OF COMMON PLEAS

2      FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

3             CIVIL TRIAL DIVISION

4                  - - - - -

5   GORDON ROY PARKER          : SEPTEMBER TERM, 2002
                               :
6          vs.                 :
                               :
7   ERIC TILLES, THE DAILY     :
    PENNSYLVANIAN, and CHRISTINA:
8   YANG                       : NO. 1068

9                  - - - - -

10             August 25, 2003

11                 - - - - -

12           Room 475, City Hall
           Philadelphia, Pennsylvania

13                 - - - - -

14
    BEFORE:  HONORABLE ALFRED J. DIBONA, JR., J.

15                 - - - - -

16
    APPEARANCES:

17
         GORDON ROY PARKER
18       Pro Se

19       JOHN M. MYERS, Esquire
         JONATHAN PYLE, Esquire
20       Attorneys for Defendant,
         Eric Tilles, Esquire

21
         JEANETTE MELENDEZ BEAD, Esquire
22       Attorney for Defendant,
         The Daily Pennsylvanian

23                 - - - - -

24             WAIVER TRIAL

25                 - - - - -

MEG CLARK, RMR
OFFICIAL COURT REPORTER

Gordon Roy Parker - Cross

1          MR. MYERS:  Wait until the Judge

2   gets it.

3          THE COURT:  I will follow along as

4   I do with juries.

5          MR. MYERS:  Very well.

6   BY MR. MYERS:

7   Q.    Mr. Parker, exhibit 15 is the resume that

8   you submitted to the University of Pennsylvania in

9   2001; is that correct?

10  A.    Correct.

11  Q.    Will you look at the top, the very first

12  line.  You did not indicate preference for any job

13  category when you submitted your resume to the

14  University of Pennsylvania, did you?

15  A.    At that time, no.

16  Q.    You did not apply for any specific position

17  at the University of Pennsylvania when you

18  submitted your resume, did you?

19  A.    I applied for general consideration for the

20  employment at Penn and did not submit for specific

21  positions, correct.

22  Q.    So you submitted for no specific position

23  and no specific job category; correct?

24  A.    No.  I submitted for administrative.  It is

25  obvious from my resume that it is administrative.

Gordon Roy Parker - Cross

1    A.    No, that is not correct.

2    Q.    You couldn't click on the item and apply for

3    the job with your resume?

4    A.    Sometimes you can, sometimes you cannot.

5    That is not always the case on the Penn Web site.

6    Q.    For many of the clerical positions for which

7    you have testified you expressed interest, you

8    could have clicked and applied for a job, couldn't

9    you have?

10   A.    I could have, yes.

11   Q.    And you did not in July of 2001; correct?

12   A.    At that time, no, I did not.

13   Q.    Would you turn to your exhibit M.

14   A.    Hold on.

15   Q.    Your exhibit M.

16   A.    Do you have all of it here?  Exhibit M.

17   Q.    They are in the binder.  Do you have it?

18   A.    It is tough to find in the binder.  I have

19   it here, however.

20   Q.    You recognize exhibit M as a page from the

21   Penn human resources Web site that you had

22   previously seen; correct?

23   A.    Correct.

24   Q.    Now, you just testified that the Web site

25   told you that your resume would go to people for

# EXHIBIT 6



**Home    Jobs@Penn    Calendar    Contact    News    Forms    Policy Manual    Course C**

Thank you for submitting your resume to the University of Pennsylvania.

If it is felt that a personal meeting would be appropriate, you will be contacted within the next thirty (30) days.

Otherwise, this will be your only communication from us.

Again, thank you for your interest in University of Pennsylvania.

We hope that you are successful in finding a rewarding position.

Please take a moment to fill out our Equal Opportunity Employment form.

Go to the form.

# EXHIBIT 7

Source: http://www.hr.upenn.edu/jobs/howtoapply.asp
Date: February 10, 2003

 Home  Jobs@Penn  Calendar  Contact  News  Forms  Policy Manual  Course Catalog

**UNIVERSITY OF PENNSYLVANIA**
# HUMAN RESOURCES


**Print View**

- ○ Jobs@Penn Home
- ○ Search Open Positions
- ○ How To Apply
- ○ The Penn Campus
- ○ Benefits At Penn
- ○ About Philadelphia
- ○ Campus Security Information

# How To Apply To The University of Pennsylvania

## Submitting Your Resume

Penn accepts resumes electronically via the Internet and stores them in their resume database. Recruiters search the resume database and forward your resumes to the Hiring Officers for positions you have expressed interest in if you meet the minimum qualifications. In addition you may be considered for any position for which you are qualified. Resumes submitted on-line remain in our database for up to a year. Internal and external candidates are strongly encouraged to submit their resume this way.





You can submit your resume from any home computer with Internet Access or visit the Penn Job Center, open from 7:30 a.m. to 6:00 p.m. at the following location:

The PENN Job Center
3550 Market Street, Suite 110 (Science Center)
Philadelphia, PA 19104

Five PC stations are available for your use with instructions on how to post your resume online.

## Tips For Creating Your Electronic Resume

Save your resume in "Rich Text" or "All-Text" format (click on "File" then "Save As"). Bring it on disk if coming to the Penn Job Center. A good practical source for resume writing is *Resume Writing for Dummies* and the corresponding *Cover Letters for Dummies*. Do not use italics, underlining, shadows, reverse type, bullets, lines (vertical or horizontal), borders, boxes, or graphics.

Resumes that include your level of PC experience and list software experience are highly regarded. In addition, list your past

accomplishments ... your resume as well as past duties.

## Contact With Penn - Interviews

Highly qualified candidates will be contacted for an interview by the PENN Hiring Officer or a central Recruiter. At the time of the interview, you will be asked to complete a PENN employment application.

Penn has many positions open. Over 50% are for research-related positions, with others in the fields of accounting, office support, information technology, management, facilities, security, food service and others.

Due to the significant volume of open positions and resumes received, we regret that we cannot answer your questions about status. You will receive confirmation via mail or e-mail that your application arrived.. For general questions, contact (215) 898-7284 from 9AM EST to 4PM EST.

## Special Provisions for Internal Applicants

Current PENN staff should apply directly to the Hiring Officer. Contact us at recruitment@hr.upenn.edu for the name of the contact person. You will receive a response (to valid PENN E-mail addresses) within 24 hours. Submit your cover letter and resume directly to the Hiring Officer. You should also apply on-line at http://www.hr.upenn.edu/jobs to be considered for any position for which you are qualified. The hiring department will contact highly qualified applicants for interviews.

The hiring department will contact highly qualified applicants for interviews.

Internal applicants should refer to Human Resources Employment Policy 117 regarding transfer eligibility. In general, you must be in your current position at least 6 months, and be in good standing, including satisfactory performance.

## An Equal Opportunity Employer

The University of Pennsylvania is an equal opportunity employer and does not discriminate on the basis of race, color, sex, sexual preference, age, religion, national or ethnic origin, disability or veteran status.

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                          :
                                            :
                    Plaintiff,              :          CASE NO.: 02-cv-567
                                            :
          v.                                :
                                            :
UNIVERSITY OF PENNSYLVANIA, a               :
Pennsylvania nonprofit corporation,         :
                                            :
                    Defendant.              :
                                            :

## DECLARATION OF DIANE HANNAH-WILSON

      Declaration of Diane Hannah-Wilson, former Director of Staffing for the University of

Pennsylvania Health System.

      1.     I make this affidavit in connection with the above-captioned litigation at the

request of counsel for the University.

      2.     I am Chief Human Resources Officer for Penn Home Care and Hospice Services,

a division of the University of Pennsylvania Health System.

      3.     I served as Director of Staffing for the University of Pennsylvania Health System

between 1999 and the fall of 2001.  In that position, I was responsible for the supervision of the

Health System's hiring.

      4.     When I was Director, the Health System's web-based job posting system was

under my supervision.

      5.     In July 2001, the Health System's web-based job posting system was the primary

method for applying for jobs with the Health System.

6.    In July 2001, individual recruiters were neither obligated to accept nor obligated to reject resumes or job applications submitted by fax. They had the discretion to accept faxed applications or to disregard them.

7.    If a job application submitted by fax lacked necessary information, recruiters sometimes would telephone the applicant to request the additional information.

8.    When a job application was submitted by fax and necessary information was available, the normal practice was for recruiters to enter the applicant's contact information into the Health System's computer database along with the job categories for the positions in which the applicant expressed interest.

9.    For every applicant name entered into the computer database, the computer system would automatically generate a postcard addressed to the applicant that acknowledged receipt of the application. That postcard would be mailed to the applicant shortly thereafter.

10.    No applicant who faxed a resume or application to the Health System would have been considered for employment unless his or her contact information and job category information had been entered into the Health System's computer database.

11.    There is no record that the Health System ever received Parker's resume on or around July 17, 2001.

12.    In connection with preparing this affidavit, and at the request of counsel for the University, I directed that a search be conducted for all applicants with the last name "Parker" in the Health System's computer database, where the date of the entry of the applicant's name fell between June 1, 2001, and August 31, 2001.

13.    Plaintiff's name, Gordon Roy Parker, did not appear in the search results. No names remotely similar to "Gordon Roy Parker" appeared in the search results.

-2-

14.     I have no memory of having received a resume from Mr. Parker.

15.     If plaintiff had applied for a job at the Health System, he would have been treated no differently had he self-identified as Caucasian or any other race, and he would have been treated no differently had he been a female.

16.     The Health System, under its hiring policy and affirmative action plan, gave no preference in hiring to women or non-Caucasians. Its policy was to insure that, in each case, the employer hires the best candidate for the position, regardless of race or gender.

17.     In 2001, the Health System received several thousands of applications for clerical positions. There were far more applications for clerical positions than there were clerical positions available.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 12, 2004.

Diane Hannah-Wilson

-3-

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Gordon Roy Parker | : | |
| Plaintiff | : | |
| v. | : | NO. 02-CV-567 |
| University of Pennsylvania | : | |
| Defendant | : | |

**EXPLANATION AND ORDER**

**Anita B. Brody, J.**                                      November 2 , 2003

Facts

     Plaintiff Gordon Roy Parker, a white male, submitted his resume to defendant University of Pennsylvania's ["Penn"] employment database on July 16th, 2001. Penn accepts resume submissions via the internet, and potential employees submit applications by following the instructions on Penn's Human Resources web page. The web page explains to applicants that, "recruiters search the resume database and forward your resumes to the Hiring Officers for positions you have expressed interest in if you meet the minimum qualifications." Applicants may either apply for specific positions, or simply submit their resumes into a database with all of the other submitted resumes. The database is searchable by key word and recruiters can consider

1

applicants who do not apply for a specific job posting.[1]

Parker did not specify any particular position for which he was applying when he submitted his resume. In response to the submission of his resume, he received an automated email response stating,

> Thank you for submitting your resume to the University of Pennsylvania. If it is felt that a personal meeting would be appropriate, you will be contacted within the next thirty (30) days. Otherwise, this will be your only communication from us. Again, thank you for your interest in the University of Pennsylvania. We hope that you are successful in finding a rewarding position. Please take a moment to fill out our Equal Opportunity Employment Form.

Parker was never contacted by defendant about employment prior to the filing of this lawsuit.[2]

Penn claims that,

> During the several months after Mr. Parker posted his resume, no positions for which Mr. Parker self identifies as being qualified for (sic) were filled from applicants found using this data base search capability. This is because qualified applicants were found among those people who actually applied for the specific jobs for which there were vacancies.

Donna Showell-Brown Aff., ¶ 11.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2001, alleging discrimination in violation of Title VII on the basis of (1) religion, (2) race, and (3) retaliation. Plaintiff also alleged discrimination in violation of the

---

[1] According to defendant's pleadings and the accompanying affidavit of Donna Showell-Brown, Manager of Recruitment and Staffing at Penn, recruiters rarely consider applicants who do not apply for a specific job posting.

[2] Plaintiff also claims to have faxed his resume to the UPenn Health System on July 17, 2001. Defendant has not responded to this allegation. It is my understanding that the only way to apply for employment at Penn is through the Human Resources website, and that faxing a resume to Penn should therefore not be considered applying.

2

Age Discrimination in Employment Act on the basis of age and retaliation and discrimination in violation of the Americans with Disabilities Act on the basis of disability and retaliation. The EEOC issued a right-to-sue letter on these claims on December 28, 2001. There is no evidence that the EEOC has issued any further right-to-sue letters to plaintiff since December 28, 2001.

On February 4, 2002, plaintiff filed a complaint in this court alleging discrimination based on race, gender, retaliation, and disability. His complaint states that Penn discriminated against him on the basis of race and gender by virtue of its affirmative action policy. The charge of retaliation alleges that, "at any given point in time, including the times in controversy in this action. . . [a]t least one position at Penn is 'poisoned' by retaliation discrimination." The disability claim, which alleges that plaintiff was discriminated against because he is bipolar, was dismissed with prejudice by order on May 22, 2003.

Plaintiff has filed a motion for partial summary judgment and defendant has filed a motion for summary judgment. Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law. Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).

Discussion


*Intentional Employment Discrimination under Title VII*

Plaintiff alleges intentional discrimination based on race and gender under Title VII. Plaintiff did not allege gender discrimination in his EEOC complaint and has not received a

3

right-to-sue letter on that claim.[3] When a plaintiff fails to raise a Title VII claim before the

EEOC, the district court lacks subject matter jurisdiction to hear it. 42 U.S.C. § 2000e-5.

Plaintiff's claim of gender discrimination is therefore dismissed.

The elements a plaintiff must establish in a claim of racial discrimination under Title VII

are set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973):

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

Plaintiff has made out a prima facie case of employment discrimination by satisfying each

of the required four prongs:

1.  The first prong of the test is that a plaintiff belong to a racial minority. This prong

    can be satisfied by whites as well as "racial minorities." Iadimarco v. Runyon,

    190 F.3d 151, 161 (3d Cir. 1999) ("All that should be required to establish a

    prima facie case in the context of 'reverse discrimination' is for the plaintiff to

    present sufficient evidence to allow a fact finder to conclude that the employer is

    treating some people less favorably than others based upon a trait that is protected

    under Title VII"). Therefore, plaintiff satisfies the first prong.

2.  The second prong of the test requires that plaintiff apply to a position for which he

---

[3]I take judicial notice of plaintiff's EEOC claim. It is attached to this Order.

is qualified. Plaintiff followed all instructions on defendant's website for the submission of his resume to Penn's database. "Failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." EEOC v. Metal Service Co., 892 F.2d 341 (3d Cir. 1990); see also Lowe v. Monrovia, 775 F.2d 998 (9th Cir. 1985) (plaintiff found to have "applied" when she filed an application, despite the fact that her application was never reviewed by employer because of policy that suspended all applications for a set period before they became eligible. The court explained that any reason the employer had for why its system did not function as planned could help to rebut the presumption of discrimination arising from the prima facie case, but did not rebut the establishment of the prima facie case itself.); Blow v. San Antonio, 236 F.3d 293 (5th Cir. 2001) (plaintiff found to have applied because she submitted an application, despite the fact that her application was never considered because another applicant was hired before plaintiff's application reached employer.) Despite defendant's contention that plaintiff did not "apply" because his resume was not reviewed by personnel, plaintiff's actions meet the second prong of the prima facie test.

3.     The third prong of the test requires that plaintiff be rejected for employment. When plaintiff submitted his resume to defendant's website, he received a form e-mail stating, in part, "If it is felt that a personal meeting would be appropriate, you

will be contacted within the next thirty (30) days." Plaintiff was not contacted within thirty days of submitting his resume. The Third Circuit has understood a failure to hire as "rejection" for purposes of Title VII employment discrimination cases. See Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir. 1996); Waldron v. SL Indus., 56 F.3d 491, 494 (3d Cir. 1995). Defendant's failure to hire plaintiff constitutes a rejection in satisfaction of the third prong.

4.   The fourth prong requires that, after plaintiff is rejected, positions remain open for which plaintiff is qualified. Defendant has not disputed plaintiff's contention that, after plaintiff's rejection for employment, positions remained open at Penn for which he was qualified. Plaintiff therefore satisfies the fourth prong.

By meeting these four requirements, plaintiff has met the initial burden of establishing a prima facie case of employment discrimination.

Once a plaintiff has met this initial burden, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for plaintiff's rejection. McDonnell Douglas, 411 U.S. at 802. Defendant claims to have failed to consider Parker's application because of its resume reviewing procedures: "The reason Penn did not hire Parker is because he had not applied for any specific position, and it did not conduct any search of the resumes of non-applicants for positions being filled." Defendant's Motion for Summary Judgment at 12.[4]

---

[4]The United States Supreme Court has explained how to meet this burden: "defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the

Once Defendant has articulated a legitimate, non-discriminatory reason for failing to hire a plaintiff, the burden returns to the plaintiff to prove that the proffered reason is pretextual. McDonnell Douglas, 411 U.S. at 804.  Plaintiff is entitled to discovery which may assist in proving this.  Defendant has already provided plaintiff with the sworn affidavit of Donna Showell-Brown, which supports defendant's statement of facts.  Plaintiff may seek further discovery related to the fate of his resume when it was submitted to Penn in July, 2001.[5]

### Employment Discrimination under a Disparate Impact Theory

In addition to alleging intentional employment discrimination on the basis of race under Title VII, plaintiff alleges discrimination under a Title VII disparate impact theory.[6]  In order to have standing to assert disparate impact, plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged action.  See Newark Branch, NAACP v. Harrison, 907 F.2d

---

prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Texas Dept of Community Affairs v. Burdine, 450 U.S. 248, 254-5 (1981). "The employer's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action." Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3rd Cir. 2003).

[5]Neither of plaintiff's outstanding motions to compel request information that would assist him in meeting his burden of showing that defendant's stated reason for failing to hire him is pretextual.  One of these motions seeks a broad array of information related to Penn employees and affirmative action at Penn (Docket #26), and the other seeks information related to alleged gender disparities at Penn (Docket #34).  The first motion is denied because it seeks irrelevant information.  The second motion is denied because I am dismissing plaintiff's gender discrimination claim and the motion requests information beyond the scope of discovery.

[6]In addition to banning intentional discrimination, Title VII also bans neutral employment practices that have a disparate impact upon protected groups of employees, unless those practices are shown to be justified by business necessity. Griggs v. Duke Power Co., 401 U.S. 424 (1971).

1408, 1413 (3d Cir. 1990). Plaintiff does not have standing to allege employment discrimination under a disparate impact theory if he cannot make out a claim that he was conceivably harmed by defendant's hiring policies. Therefore, if plaintiff cannot prove that defendant considered him for employment, he does not have standing. I will defer resolution of the disparate impact claim and consider it in conjunction with the intentional discrimination claim.

### Retaliatory Employment Discrimination

Plaintiff alleges that defendant failed to investigate his internal grievance in good faith. A prima facie case of retaliation is established similarly to a prima facie case of employment discrimination: a plaintiff must show that (1) he or she engaged in a protected form of activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. If the plaintiff is able to establish the prima facie case, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. If the employer satisfies that burden, the plaintiff must then prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003). Plaintiff has made out a prima facie case of retaliation discrimination by alleging that defendant failed to hire him because he filed an internal grievance. Defendant has stated a legitimate, non-retaliatory reason for failing to hire plaintiff: that his application was never reviewed. Plaintiff now must prove that defendant's stated reason is pretextual. The evidence plaintiff will need to prove pretext on the retaliation claim is the same that he will need to prove pretext on the employment

8

discrimination claim. I will therefore defer review of this retaliation claim until discovery is concluded.

## O R D E R

AND NOW, this 3ᵈ day of November, 2003, it is **ORDERED** that:

- Plaintiff's Motion to Compel Discovery Pursuant to Rules 26 and 37 (Docket #26) is **DENIED**.

- Plaintiff's Motion to Compel Discovery Pursuant to Rule 37 (Docket #34) is **DENIED**.

- Plaintiff's Motion for New Scheduling Order (Docket #32) is **GRANTED**. A new scheduling order will be issued separately from this order.

- Plaintiff's Motion for Reconsideration and for Evidentiary Hearing Certificate of Service (Docket #31) is **DENIED** as moot. The motion requested reconsideration of my order scheduling a teleconference regarding Defendant's Motion for Sanctions and Plaintiff's Motion to Compel Discovery, and requested, in the alternative, an evidentiary hearing. The teleconference occurred on May 22, 2003.

- Defendant's Motion for Summary Judgment is granted in part and denied in part. Defendant's Motion for Summary Judgment on Plaintiff's claim relating to gender discrimination is **GRANTED**. As to the other claims, Defendant's Motion for Summary Judgment (Docket #43) is **DENIED** without prejudice to reassert at a later stage of the litigation.

- Plaintiff's Motion for Partial Summary Judgment (Docket #42) is **DENIED**.

ANITA B. BRODY, J.

Copies **FAXED** on 11-5-2003 to:
Crystal D. Deazle, Esq.
John M. Myers, Esq.

Copies **MAILED** on 11-5-2003 to:
Gordon Roy Parker, plaintiff

10

uo : 10/23/2003     EQUAL EMPLOYMENT OPPORTUNITY COMMISSION     Page 1 of 1

me : 12:09:53         Charge Detail Inquiry

| | |
|---|---|
| **CHARGE #** 170-2002-00125C    **RECEIVING OFFICE** 170   **UNIT** 4   **STAFF** Joseph Danese | **DATE INITIAL INQUIRY** 09/01/2001 |
| **LEAD CHARGE #**    **ACCOUNTABLE OFFICE** 170 | **DATE FIRST OFFICE** 10/23/2001 |

**CHARGING PARTY INFORMATION**

Parker, Gordon Roy

4247 Locust Street # 806

Philadelphia    PA   19104   Country USA

Home (215) 386-7366    Work

SSN   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    Date Of Birth   01/06/1967

Sex   M   Race W    Nat Origin   O

**C O N T A C T**   Mr. Walter Parker

4247 Locust Street # 806

Philadelphia    PA   19104   Country USA

Phone (215) 386-7366

Email Address

**DATE DISTRICT** 10/23/2001

**THIS OFFICE DATE** 10/23/2001

---

**RESPONDENT INFORMATION**

UNIVERSITY OF PA

3400 Spruce Street

Philadelphia    PA   19104   Country USA

Phone     FAX

R Type   E    EEO #    SMSA 6160

SIC Codes   999    Nonclassifiable Establishments

**C O N T A C T**     Country

Phone

Email Address

---

**PROCESSING INFORMATION**

Deferral Office     Source Of Complaint   A     Processing Type   O      Processing Category   C

Staff Stanford Lamb      Staff Assigned Date   12/04/2001      Staff Function/Unit   E1

Last Action     12/27/2001 7 X1 CP Filed Suit Office: 170 F/U: E1 Del:A

Final Closure Action   12/27/2001 7 X1 CP Filed Suit Office: 170 F/U: E1

Subpoena:     Suspense:     **Transfer From:**

---

**ALLEGATIONS** ✳ ↓ ↓ ↓

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Alleg# 1 | SBI: T | AO H2 | Cont Act? N | Litigation? N | Cause? N | First DOV | 07/16/2001 | Last DOV | 07/16/2001 |
| Alleg# 2 | SBI: T | OR H2 | Cont Act? N | Litigation? N | Cause? N | First DOV | 07/16/2001 | Last DOV | 07/16/2001 |
| Alleg# 3 | SBI: T | RW H2 | Cont Act? N | Litigation? N | Cause? N | First DOV | 07/16/2001 | Last DOV | 07/16/2001 |
| Alleg# 4 | SBI: A | OA H2 | Cont Act? N | Litigation? N | Cause? N | First DOV | 07/16/2001 | Last DOV | 07/16/2001 |
| Alleg# 5 | SBI: A | OR H2 | Cont Act? N | Litigation? N | Cause? N | First DOV | 07/16/2001 | Last DOV | 07/16/2001 |
| Alleg# 6 | SBI: O | OR H2 | Cont Act? N | Litigation? N | Cause? N | First DOV | 07/16/2001 | Last DOV | 07/16/2001 |
| Alleg# 7 | SBI: D | Z2 H2 | Cont Act? N | Litigation? N | Cause? N | First DOV | 07/16/2001 | Last DOV | 07/16/2001 |

**BENEFITS**

---

**ACTION HISTORY**

| Date | Seq | Code | Description | Attributes | Office | F/U | Del |
|---|---|---|---|---|---|---|---|
| 12/03/2001 | 1 | B6 | Assign Processing Category | 1:C 2:O | 170 | t1 | |
| 12/03/2001 | 2 | B4 | Send to Function/Unit | 1:E 2:O 3:P | 170 | t1 | |
| 12/04/2001 | 4 | G1 | Assigned To Staff | 1:WDC 2:W | 170 | E0 | |
| 12/04/2001 | 5 | G1 | Assigned To Staff | 1:SRL 2:W | 170 | E1 | |
| 12/27/2001 | 6 | N2 | NRTS Issued At CP Request | | 170 | E1 | |
| 12/27/2001 | 7 | X1 | CP Filed Suit | | 170 | E1 | |

---

$\small\text{c}$    T = Title VII      A = ADEA      D = ADA

AO = Religion (other)    OA = Age        OR = Retaliation

OR = Retaliation    OR = Retaliation    Z2 = Disability (other)

RW = Race (White)

H2 = Hiring

# EXHIBIT 10

e

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br><br>v.<br><br><br>**UNIVERSITY OF PENNSYLVANIA**, a<br>Pennsylvania nonprofit corporation,<br>Defendant. | **CASE NO.: 02-cv-567** |

## PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff Gordon Roy Parker, pro se, hereby requests that Defendant University of

Pennsylvania ("Penn" or "UPenn") serve a written answer *under oath* which identifies all

documents produced or made available, and produce documents for inspection and copying by

Plaintiff and/or his agent within thirty (30) calendar days of the date hereof.

### A. INSTRUCTIONS

1.      In responding to the following requests for production of documents, Penn shall

furnish all documents of whatsoever kind which are responsive to any of the requests below,

including without limitation each and every letter, note, memorandum, diary, summary, posting,

handbook, manual, medical or psychiatric records as well as all electronic, mechanical, electrical

and oral records and all graphic representations of any kind in the possession, custody or control of

Penn, or in the possession, custody or control of Penn's attorneys, employees or other agents.

2.      In Penn's answer to the following document request, Penn shall state whether Penn

acknowledges having any such documents or claims to have no such documents in its possession,

custody or control.  With respect to those documents or categories of documents which Penn

acknowledges having, Penn shall number each document and further identify each document by

author, title, addressee, date and general subject matter, and thereafter advise whether Penn agrees to produce all such documents, or objects to the production of any documents, in which latter case Penn shall set forth in detail the nature of each and every objection.

    3.     If Penn claims that any requested documents are privileged and not subject to discovery, Penn shall nevertheless timely produce each and every document as to which no privilege is claimed. At the same time, Penn shall set forth in detail the nature of the privilege asserted with respect to each document. If attorney/client privilege is being claimed by Penn, the answer shall identify both the attorney and the client, and attach a statement by the client, or a verification by the attorney that the client has been consulted with regard to any such privilege asserted for the specifically identified document, and that the privilege is in fact being asserted by the client.

    4.     Penn shall promptly supplement this production if additional responsive documents are located subsequent to the time of production. However, nothing contained herein shall relieve the Board of the duty to perform a diligent search for all requested documents and to produce them initially within the specified time. Nor shall this instruction constitute a waiver of the right to seek the preclusion at trial of any documents not produced in a timely manner, or to seek any other appropriate sanction in the event that any document described herein is not produced in accordance with this request.

## B. DOCUMENTS TO BE PRODUCED

    1.     Produce each and every document relating to any police report filed with the Penn Department of Public Safety by Plaintiff during September 2001, including but not limited to the report filed on or about September 12-13, 2001 over internet threats Plaintiff had received by a Penn student known to Plaintiff only as "Wintermute."

2.    Produce document(s) sufficient to identify the records from the Penn "IP Assignments" database that reveal the location of the computer and the accountholder associated with each IP address listed below, for each date and time listed (these are the IP addresses and times for the defamatory and threatening messages posted by "Wintermute" and which were previously attached as exhibits in other pleadings and which should already be in Penn's possession).

| DNS/IP Address | Date | IP Address |
|---|---|---|
| wlt-102-199.greeknet-student.upenn.edu | 09/11/2001 | 199.102.123.165 |
| wlt-102-199.greeknet-student.upenn.edu | 09/26/2001 | 199.102.123.165 |
| wlt-102-224.greeknet-student.upenn.edu | 02/19/2002 | 165.123.102.224 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 08/06/2002 | 165.123.197.36 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 08/13/2002 | 165.123.197.36 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 11/14/2002 | 165.123.197.36 |
| wlt-102-199.greeknet-student.upenn.edu | 09/15/2001 | 199.102.123.165 |
| School of Engineering And Applied Science | 10/24/2001 | 158.130.22.103 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 04/22/2003 | 165.123.197.36 |

3.    Produce any police reports or other summaries in Penn's possession, including but not limited to those from the Department of Public Safety and Penn's ISC, of any incidents in the years 2001-2003 which involve anyone with a PennNET account who has been accused of illegal behavior over the internet, including but not limited to making threats, sending mass, unsolicited e-mail ("spam"), or infringing copyrights.

4.    Produce and date, in CD-ROM format, the current contents of the entire UPenn website (http://www.upenn.edu) as it currently exists.

3

5.    Produce a true and accurate copy of the UPenn student directories from 1999-2000, 2000-01, 2001-02, and 2002-03.

6.    Produce document(s) sufficient to identify the names of every Penn student who, at any time since 1999, were students at Penn who listed Mechanical Engineering as their Major and Mathematics as their Minor.

7.    Produce document(s) sufficient to identify the names of every student who has received a degree in Mechanical Engineering at Penn during the calendar years of 2002-2003.

8.    Produce document(s) sufficient to identify the names of every Penn student who, as of May 2002, whose home address was listed in UPenn records as Massachusetts.

9.    Produce document(s) sufficient to identify the names of every Penn fraternity with a house located on the Penn campus or in an off-campus location (i.e., which is part of "GreekNET"), and list all members of each fraternity, for the period from the Fall Semester of 1999 through the Spring Semester of 2003.

10.    Produce document(s) sufficient to identify the names of all Penn staff who have been involuntarily terminated from their positions since July 16, 2001, and the particulars surrounding each termination.

11.    Produce document(s) sufficient to identify the names of all Penn staff who have filed internal grievances at Penn since July 25, 1993, the particulars of each grievance, and the resolution.

12.    Produce document(s) sufficient to identify the case numbers, parties, and any outcome of any lawsuits or government agency actions/initiatives filed in any court, or any complaints filed with any government agency (such as EEOC), within the past ten years.

4

13..    Produce document(s) sufficient to identify all job listings for all full-time administrative ("A-3") positions within Penn, on or at any time since July 16, 2001, and which specify whether or not the position was classified as a "special effort search" under Penn's affirmative action plan or any "diversity" policy at Penn.

14.    Produce document(s) sufficient to identify the names of all Penn administrative and clerical ("A-3") staff who have filed an employee grievance within Penn since July 1993.

15.    Produce each and every document relating to all employee grievances filed within Penn which contain any allegation of sexual harassment, and which were filed at any time on or after July 25, 1992 and which have not been produced pursuant to paragraph (2) above.

16.    Produce all correspondence to Plaintiff generated in response to any position for which Plaintiff has interviewed for at Penn since July 16, 2001.

17.    Produce all interview notes or summaries from Dr. Joseph Volpicelli of the Treatment Research Center ("TRC") from any employment interviews for fulltime secretarial positions at the TRC between him and Plaintiff which occurred during 1993.

Respectfully submitted:

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366

**November 24, 2003**

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br><br>v.<br><br><br>**UNIVERSITY OF PENNSYLVANIA**, a<br>Pennsylvania nonprofit corporation,<br>Defendant. | **CASE NO.: 02-cv-567** |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, Plaintiff Pro Se in the above-styled action, have served a true and correct copy of the foregoing **Plaintiff's Second Set Of Interrogatories** on Defendant through its undersigned counsel, by **hand delivery**:

> John M. Myers, Esq.
> Crystal D. Deazle, Esq.
> Montgomery, McCracken, Walker & Rhoads
> 123 South Broad Street, 28th Floor
> Philadelphia, PA 19109

This the 24th Day of November, 2003

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366

6