# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Gordon Roy Parker

    Plaintiff

v.      NO. 02-CV-567

University of Pennsylvania

    Defendant

## EXPLANATION AND ORDER

The facts of this case are set forth in my Explanations and Orders of November 5, 2003 and January 5, 2004.[1] (Docket #51 and Docket #55, attached.) In the November 5, 2003 Order, I denied plaintiff's motion for summary judgment and denied defendant's motion for summary judgment without prejudice to re-assert at a later stage of litigation. The parties have again filed cross-motions for summary judgment. Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law. Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997). For the reasons that follow, defendant's motion for summary judgment is granted.

---

[1] The latter opinion is a brief order following plaintiff's motion for reconsideration of the former opinion. In the November 2003 opinion I dismissed plaintiff's gender discrimination claim based on erroneous information received from the Equal Employment Opportunity Commission. The January 2004 opinion reinstates the gender discrimination claim.

*Intentional Employment Discrimination under Title VII*

In the November 2003 opinion, I considered plaintiff's claims of intentional gender and racial discrimination under the McDonnell Douglas framework, which requires that:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

In the November 2003 opinion, I found that plaintiff had proven a prima facie case of discrimination by meeting the four requirements: (1) as a white man, plaintiff can still be considered a "minority" for purposes of discrimination under Title VII; (2) plaintiff applied for and was qualified for a job at Penn; (3) plaintiff was not hired by Penn; and (4) employment positions remain open at Penn. I also found that defendant had met its burden of advancing a legitimate, non-retaliatory reason for not hiring plaintiff by offering proof that it did not consider plaintiff's application because plaintiff did not apply for specific positions. I then denied defendant's summary judgment motion in order to allow plaintiff to seek further discovery related to the fate of his resume when it was submitted to Penn on July 16, 2001.

In response to my instructions, plaintiff submits two pieces of evidence. First, plaintiff submits a statement on Penn's website:

> **Contact with Penn – Interviews**
> Highly qualified candidates will be contacted for an interview by the PENN Hiring Officer or a central Recruiter. At the time of the interview, you will be asked to complete a PENN employment application. Penn has many positions open. Over 50% are for research-related positions, with others in the fields of

> accounting, office support, information technology, management, facilities, security, food service and others.

(Pl. Mot. Sum. J. 17, quoting http://www.hr.upenn.edu/jobs/howtoapply.asp.) This evidence does nothing to undermine defendant's position that only candidates who applied for specific positions were considered by the university.

Second, plaintiff submits a letter he wrote to Valerie Hayes, Director of Penn's Office of Affirmative Action and Equal Opportunity, on July 27, 2001. The letter requests "immediate placement in a position for which [he is] qualified," and that "Penn immediately reclassify white males as minorities in job classifications where they constitute actual minorities." (Pl. Mot. Summ. J. Ex. C.) The letter does not mention plaintiff's July 16, 2001 resume submission that is at the heart of this case. Plaintiff argues that this letter should have prompted Penn to contact him about proper employment application procedures. There is nothing in this evidence or in the applicable law to suggest that this letter created any legal obligation for Penn.

Plaintiff can prove pretext (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. Raad v. Fairbanks N. Star Borough, 323 F.3d 1185, 1194 (9th Cir. 2003). Plaintiff has failed to show that defendant's proffered explanation is unbelievable or that unlawful discrimination more likely motivated defendant. Defendant's assertion that it did not conduct any search of the resumes of applicants who did not apply for a specific job during the relevant time frame is credible and supported by defendant's proffered evidence. (See Affidavit of Donna Showell-Brown.) Plaintiff has brought forth no persuasive evidence in support of his theory that

3

defendant's proffered reason for failing to hire him – that he did not apply for any specific position and no search was done of applicants who did not apply for any specific position – is pretextual.[2]

I therefore find that there is no genuine issue of material fact remaining with respect to these claims. Plaintiff's failure to meet his burden of proving that defendant's proffered reason for failing to hire him was pretextual mandates that defendant be granted summary judgment on plaintiff's intentional discrimination claims.

*Employment Discrimination under a Disparate Impact Theory*

In addition to intentional discrimination, plaintiff also alleged racial discrimination under a disparate impact theory. In addition to banning intentional discrimination, Title VII also bans neutral employment practices that have a disparate impact upon protected groups of employees, unless those practices are shown to be justified by business necessity. Griggs v. Duke Power Co., 401 U.S. 424, 430 (1971); Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986-7 (1988). Article III of the United States Constitution permits federal courts to hear only actual "cases" or "controversies". U.S. CONST. art. III, § 2. Under Article III's case or controversy requirement, a

---

[2]This is not to say that plaintiff has submitted a scarcity of evidence to the court. On the contrary, plaintiff has submitted data related to Penn's affirmative action policy; correspondence among Penn employees relating to plaintiff's EEOC charge; plaintiff's complaint and related evidence in another matter before this court, Parker v. Learn the Skills Corp., Civ. A. No. 03-6396; plaintiff's performance evaluations from his previous employment at Penn; federal guidelines related to affirmative action; Penn Human Resources tips for new staff; the company profile of ivillage.com, where Penn has advertised job postings; plaintiff's expert's deposition; plaintiff's resume; plaintiff's rejection letters from Penn, received after the filing of this lawsuit; and materials related to Penn's support of diversity. None of this evidence supports plaintiff's argument that Penn's stated reason for not hiring him is pretextual.

4

federal court may not decide "abstract, hypothetical or contingent questions." Alabama State Fed. of Labor v. McAdory, 325 U.S. 450, 461 (1945). Axiomatic to this concept is the requirement that a plaintiff have standing to pursue a claim. Elk Grove Unified School Dist. v. Newdow, 124 S.Ct. 2301, 2308 (2004). In order to have standing, Article III requires a plaintiff to "show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress." Id. In a disparate impact case considering whether plaintiffs had standing, the Third Circuit explained that the "Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." Newark Branch, NAACP v. Harrison, 907 F.2d 1408, 1412 (3d Cir. 1990) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975).)

Plaintiff did allege injury traceable to defendant's actions in his complaint, but we are now at the summary judgment stage and he has failed to prove that he suffered any injury stemming from defendant's allegedly discriminatory practices. There is simply no evidence that any decisions Penn has allegedly made with respect to promoting employment diversity have ever had any effect on plaintiff. Plaintiff has failed to prove the necessary element of injury in fact, Elk Grove, 124 S.Ct. at 2308, and has thereby failed to prove standing to pursue his disparate impact claim.³ There being no case or controversy before me, I will dismiss plaintiff's

---

³Plaintiff insists that the Supreme Court's decision in Northeastern Fla. applies to this case. Northeastern Fla. Chapter Assoc. Gen. Contractors Am. v. City of Jacksonville, 508 U.S. 656 (1993). This case involved a constitutional challenge to a city ordinance according preferential treatment in the awarding of city contracts to certain minority-owned businesses. The court held that, in these kinds of equal protection cases, a plaintiff "need not allege that he

5

disparate impact claim.[4]

*Retaliatory Employment Discrimination*

Finally, plaintiff alleges that defendant failed to investigate his internal grievance in good faith. A prima facie case of retaliation is established similarly to a prima facie case of employment discrimination: a plaintiff must show that (1) he or she engaged in a protected form of activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. If the plaintiff is able to establish the prima facie case, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. If the employer satisfies that burden, the plaintiff must then prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003).

I found in the November 2003 order that plaintiff alleged a prima facie case of retaliation

---

would have obtained the benefit but for the barrier in order to establish standing." Northeastern, 508 U.S. at 666. As I discuss infra, footnote 6, plaintiff has not brought an equal protection claim and this standard is therefore inapposite.

[4]Plaintiff makes two additional arguments for standing. First, plaintiff argues that he "has standing as a private attorney general to seek a finding that Penn has violated any anti-discrimination law, even if he is not personally entitled to damages." (Pl. Mot. Summ. J. 2.) Plaintiff cites no legal support for this argument. Although the Supreme Court supports awarding counsel fees to prevailing plaintiffs in civil rights cases who obtain injunctive relief against racial discrimination, Newman v. Piggie Park Enterprises, 390 U.S. 400 (1968), there is nothing in the jurisprudence to suggest that anyone claiming to act as a "private attorney general" is entitled to standing. Second, plaintiff argues that, "because he has alleged an equal protection violation. . . he has standing to sue by virtue of an inability to compete on equal footing." (Pl. Mem. Supp. Mot. Summ. J. 3.) I need not address this argument, as plaintiff has not in fact alleged an equal protection violation. The face of plaintiff's First Amended Complaint is clear: he brings four Title VII claims (based on race, gender, disability and retaliation,) but at no time has he plead an equal protection violation.

discrimination by stating that defendant failed to hire him because he filed an internal grievance. I also found that defendant has stated a legitimate, non-retaliatory reason for failing to hire plaintiff: that his application was never reviewed. I instructed plaintiff in the November 2003 opinion that he now must prove that defendant's stated reason is pretextual. Just as plaintiff has failed to prove pretext sufficient to proceed with the intentional employment discrimination claims, he has failed to prove pretext sufficient to proceed with his retaliation claim. Plaintiff's retaliation claim is therefore dismissed.

## **ORDER**

**AND NOW**, this           day of                2004, it is **ORDERED** that:

- Defendant's motion for summary judgment (Docket #60) is **GRANTED** and this case is **DISMISSED** with prejudice.

- Plaintiff's motion for summary judgment (Docket #62) is **DENIED**.

- Plaintiff's motion for reimbursement of costs (Docket #75) is **DENIED**.

                                                            _____
                                                            ANITA B. BRODY, J.

Copies **FAXED** on _____ to:     Copies **MAILED** on _____ to:

O:\TRICIA\Civil\Parker\Parker sj2.wpd

8